MIDLAND VALLEY RAILROAD COMPANY v. ENNIS.

Opinion delivered July 14, 1913.

1. MASTER AND SERVANT—DEATH OF SERVANT—LIABILITY—SUFFICIENCY OF EVIDENCE.—Where a servant of a railroad company is killed by the railroad, in an action against the railroad company by the administrator of deceased, the evidence *held* insufficient to warrant a verdict in favor of the administrator. (Page 210.)

2. DEPOSITIONS—WITNESS PRESENT AT TRIAL.—Under Kirby's Digest, § 3157, fourth subdivision, the deposition of a witness is properly excluded when the witness himself is present at the trial, by the procurement of the party offering to introduce the deposition. (Page 213.)

3. WITNESSES—IMPEACHMENT—CONTRADICTORY DEPOSITION.—A witness who has testified orally may be impeached by the introduction of his testimony taken on deposition, contradicting his oral testimony, although such deposition is inadmissible as substantive testimony. Kirby's Digest, § 3137. (Page 213.)

4. ACTIONS—JOINDER—ACTION FOR WRONGFUL KILLING OF SERVANT.—Actions for wrongful death are separate and distinct under the State and Federal laws, but, under Kirby's Digest, § 6079, subdivision 6, the same may be joined in the same complaint. (Page 217.)

5. PLEADING—AMENDMENTS TO COMPLAINT.—Under Kirby's Digest, § 6145, the trial court may in its discretion, before the commencement of the trial, allow a complaint to be amended so as to change the cause of action to another cause of action, which might have been joined in the same action; and at any time during the progress of the trial may permit an amendment which does not substantially change the claim, so as to conform to the facts proved. The only limitation is, that after the proof is introduced, the pleadings can not be amended so as to substantially change the cause of action. (Page 218.)

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon,* Judge; reversed.

*Edgar A. de Meules* and *Sol H. Kauffman,* for appellant; *J. W. McLoud,* of counsel.

1. A plaintiff can not impeach his own witness by proof of prior contradictory statements without first

showing that he had been entrapped by the witness or that his testimony amounts to a surprise. 40 Cyc. 2559; 50 Cent. Dig., Witnesses, § 1214; 7 Enc. of Ev. 31; Greenleaf on Ev. (16 ed.), § 444; 154 U. S. 134, 38 L. Ed. 936; 99 Wis. 639, 75 N. W. 416; 2 Okla. Cr. 362, 102 Pac. 57; 93 Pac. 1049; 153 Cal. 652, 96 Pac. 266; 34 Fla. 185; 15 So. 904; 20 Mont. 574, 52 Pac. 611; 110 S. W. (Tex.) 1013; 103 S. W. (Tex.) 911; 60 S. W. (Tex.) 881; 45 S. W. 808; 45 Fla. 8; 92 Ark. 237, 122 S. W. 506; 59 Miss. 243; 116 La. 36, 40 So. 524; 111 Pac. (Okla.) 679, 140 A. St. Rep. 668, 31 L. R. A. (N. S.) 1166. There can be no claim of surprise where a party places a witness upon the stand with notice that the witness will testify adversely to him; and the practice of questioning one's own witness for the sole purpose of impeaching him is not permissible, *supra;* 115 Cal. 50, 46 Pac. 863; 89 Pac. 757; 9 Idaho 35, 71 Pac. 608.

The error of this method of procedure is so substantially prejudicial, that it is not cured by the giving of an instruction to the jury at defendant's request to the effect that proof of prior inconsistent and contradictory statements does not tend to establish the truth of the matter set forth in said statements. 70 Miss. 742, 12 So. 852; 100 S. W. (Tex.) 927; *Id.* 770; 92 S. W. (Tex.) 1093.

Admission of proof of prior contradictory statements was further erroneous for the reason that the witness had not testified prejudicially to the plaintiff at the time of his impeachment. 40 Cyc. 2696; 10 Enc. Pl. & Pr. 320; 7 Enc. of Ev. 31-35; 34 Fla. 185, 15 So. 904; 65 W. Va. 375, 64 S. E. 260; 18 Ore. 307, 22 Pac. 1064; 29 Ore. 85, 43 Pac. 947; 24 S. W. 904; 46 Fla. 166; 49 Cal. 384; 141 Cal. 529; 153 Cal. 652; 94 Cal. 550; 110 S. W. 1013.

2. The court erred in refusing a peremptory instruction in favor of the defendant.

The verdict of the jury is not supported by sufficient evidence. There is no evidence whatever that he was caught between the ties, or that he was

caught in any manner and was unable to extricate himself. 115 S. W. 890; 76 Ark. 436; 181 Fed. 91; 98 Tex. 451; 126 Pac. 760; 139 N. C. 273; 56 Ill. App. 578; 89 S. W. 810; 103 Va. 64; 157 N. W. 244; 93 S. W. 868; 28 Ky. Law Rep. 989; 75 Md. 38; 75 Md. 38; 23 Atl. 65; 81 Atl. 267; 79 Ark. 437; 73 Tex. 304; 47 Minn. 384; 131 N. Y. 671; 97 Pa. 450; 159 Mass. 589; 150 S. W. (Ark.) 572; 179 U. S. 658; 222 Mo. 488; 72 S. C. 398; 140 S. W. 579.

It is apparent that appellee relied in the lower court upon the prior contradictory statements of the witness Young to make out his case. It is elementary law of evidence that proof of prior inconsistent statements of a witness can be introduced and considered only for the purpose of impeachment, and not as substantive evidence of the truth of the matter stated. 40 Cyc. 2764; 7 Enc. of Ev. 249; 50 Am. Dig., Cent. Ed., 1655; Wigmore on Ev. § 106; 132 Mo. 363; 80 Ky. 507; 34 Fla. 185; 123 Cal. 374; 100 S. W. 770; 111 Pac. (Okla.) 679; 75 N. H. 23; 67 Ark. 594; 18 S. W. (Ark.) 172; 72 Ark. 582; 73 Ark. 484.

The peremptory instruction should have been given for the further reason that the cause of action alleged was not proved. The allegations of the complaint bring this case within the operation of the Federal Employers' Liability Act, which is paramount and exclusive. Thornton, Fed. Employers' Liability Act, § 40, p. 223; *Id.* p. 424; *Id.* 444; 175 Fed. 506; 173 Fed. 527; 184 Fed. 828; 140 S. W. (Ark.) 579; 33 S. C. Rep. (U. S.) 135; *Id.* 192; 167 Fed. 660; 233 U. S. 1; 200 Fed. 44. The laws of the State of Oklahoma, therefore, in so far as they covered the same subject, were superseded by the Federal act, and the plaintiff must recover under that act or not at all. So long as the complaint shows that the Federal statute was applicable, it was the sole measure and source of the plaintiff's right of action. 167 Fed. 660; 158 U. S. 285, 29 L. Ed. 983; Thornton, Fed. Employers' Liability Act, § 19, p. 35; 197 Fed. 537; *Id.* 578; *Id.* 579; *Id.* 580; 153 S. W. 163; 148 S. W. (Mo.) 1011.

There was no attempt made nor any request to amend the complaint so as to base a right of action upon the laws of Oklahoma. Even if an amendment had been offered it would have been the duty of the court to refuse it, because a new cause of action can not be introduced by way of amendment. 70 Ark. 319; 75 Ark. 465; 83 Ga. 441; *Id.* 659; 113 Ga. 15; 78 Atl. 34; 158 U. S. 285, 39 L. Ed. 983.

*Hill, Brizzolara & Fitzhugh,* for appellant; *Cunningham & Berry,* of counsel.

1. The parties having elected to try upon one issue in the lower court, the defendant will not be permitted to try it upon a different issue on appeal. 64 Ark. 305.

On the point that there had been no amendment nor request to amend the complaint, it is enough to say that there could be no more effective way of amending the complaint than by requesting and having the trial court to give an instruction that a certain allegation was withdrawn. The court's discretion and authority in the matter is clear. Kirby's Dig., §§ 6140, 6141, 6142, 6145; 42 Ark. 57; 94 Ark. 365.

2. It was error to exclude the deposition of the witness Young at the time it was offered by plaintiff. Kirby's Dig., § 3157; 49 S. W. 791; 23 S. E. 207; 17 Ill. 406; *Id.* 571; 11 Humph. (Tenn.) 90. If it was error to exclude this deposition, it was induced by appellant, of which it can not complain; and it can not complain of the subsequent error, if it was error, in permitting it to be used to contradict the witnesses.

The statement given by Young to Mr. Green, the claim agent, on the next day after the accident, was identified by him as containing the absolute facts so far as he knew them. It is not mere contradiction of the witness, but is affirmative testimony of itself, tending to prove the facts therein stated. 1 Greenleaf on Ev. (16 ed.), §§ 436-439; 63 Ark. 187.

The rule formulated under section 3157, Kirby's Digest, is not limited to cases where the party seeking

the contradiction of a witness must show that he was entrapped or his testimony amounts to a surprise. The statute is broad and was passed to destroy the rule of evidence appellant contends for. 2 Wigmore on Ev., § 896; *Id.* § 904; 1 Greenleaf on Ev. (2 ed.), § 444.

3. A peremptory instruction to find for the defendant was properly refused, because, leaving the testimony of Young entirely out of it, there is sufficient evidence in the record to go to the jury, and to sustain a finding that defendant came to his death from one of the causes alleged in the complaint. *St. Louis, I. M. & S. Ry. Co. v. Hempfling,* 107 Ark. 476.

McCulloch, C. J. Appellee's intestate, H. J. Caver, was employed by appellant in the capacity of a brakeman, and while working as such was killed at Nelogany, Oklahoma, on October 16, 1911, being engaged at the time in switching freight cars from appellant's road to the tracks of a connecting carrier, the Missouri, Kansas & Texas Railroad Company.

This is an action by appellee as administrator of the estate to recover damages on account of the suffering alleged to have been endured by deceased as a result of the injury, and the loss of contributions to the widow as next of kin.

An appeal has been prosecuted from a judgment in appellee's favor.

There are numerous assignments of error, the most important of which is that the evidence is not sufficient to sustain the verdict.

We have reached the conclusion that the evidence is not sufficient, and the case will be reversed on that ground, so that it will not be necessary to discuss all of the assignments. Only those will be mentioned which will necessarily arise in further proceedings in the case when remanded to the circuit court for a new trial.

The freight train on which Caver was serving as brakeman reached the station of Nelagony at night, and contained several cars which were to be switched over to the tracks of the connecting carrier for delivery to the

latter. Appellant's main track runs east and west, and there is a track south of the station called the delivery track connecting the two roads. Between the delivery track and the station house is a track called the house track, which runs parallel with the delivery track and is connected with it by a switch. It was at this switch that Caver was killed by the moving cars which were being switched over to the line of the connecting carrier. For a short space near the switch the ties were laid irregularly, in some instances wide apart at one end and close together at the other, thus forming angles, and the roadbed was very rough from the frog for a distance something over twelve feet, where there was a gully which ran across the roadbed. The gully was about fifteen inches deep from the top of the ties to the bottom of the gully. Grass and weeds were growing between the ties, which covered the surface of the ground so that the condition could not be easily discovered.

The injury occurred on a dark night, and the proof shows that Caver had previously made three trips on this run as brakeman.

It is also alleged that the frog of the switch was not properly blocked or that the block had been permitted to get out of repair. There is some testimony to the effect that the block in the frog had become worn to about half of the ordinary thickness.

After the train came into the station, Caver, in the discharge of his duties, cut the caboose off from the train and spotted it on the main line, and lined up the main track switch, which was east of the station house, the train having come from the west. He then went to the switch where it connects with the transfer track, and, after throwing the switch, gave a back-up signal, which brought the engine with the cars to be transferred backing in on the track on the way to the line of the connecting carrier. It was his duty to go with the cars until they got on the track of the connecting carrier.

Caver was killed by being run over by the freight cars at the switch which connected the two sidetracks.

None of the trainmen were looking at him at the time the train ran over him, and could give no account as to how he came to be struck by the train or got under the car, though they saw him a few moments before when he lined up the switch so as to let the cars back in from the main track. Some one gave a lantern stop signal about the time that he was run over, and this signal was supposed to have been given by him, though it was not certain from the testimony whether he gave it or not. He was heard by a witness to cry out when the train struck him. The train was running very slowly, about four miles an hour according to the testimony, and was stopped in a very few feet after the signal was given. The conductor was the first one to get to the place, and he found Caver with his body between the rails and both feet extended over the outside of the track. He was right at the frog of the switch, and blood and crushed bone were found on the rails at that place. There was no evidence, as far as the record discloses, of the body being dragged along with the moving train. He died immediately after being extricated from beneath the car.

The only person who claims to be an eye-witness was a man named Young, who before the trial gave several conflicting statements, and also gave his deposition, which was in conflict with his testimony detailed on the witness stand. This man was not an employee, but was stealing a ride on a freight train of the Missouri, Kansas & Texas Railway Company. He claims to have been near the spot attending to a call of nature when Caver's injury and death occurred. The witness was found in Kansas City, and appellee took his deposition for use at the trial, but the witness was present at the trial by procurement of appellant, and the court refused to permit appellee to read the deposition and required him to introduce the witness in person. This was done over appellee's objection, who insisted upon the right to introduce the deposition.

We are of the opinion that the court was correct in

its ruling in this respect.   The authorities cited in appellant's brief sustain the ruling.

The statute on the subject is explicit and provides that depositions may be used on the trial ''where the witness resides thirty or more miles from the place where the court sits in which the action is pending, unless the witness is in attendance on the court.''   Kirby's Digest, § 3157 (4 subdiv).

In the deposition the witness gave testimony which tended to support the contention of appellee that Caver stepped into the ditch and fell and was unable to extricate himself before he was struck by the moving freight car.

His testimony as given on the witness stand was, however, altogether different, and failed to add anything to the strength of appellee's case.   In fact, he testified that he saw Caver start across the track right at the frog of the switch and immediately in front of the moving train.   His testimony made a clear case of injury on account of his own negligence in stepping immediately in front of the moving train.

The court allowed appellee to introduce the deposition and other statements made by the witness in contradiction of his testimony, but held that it was inadmissible as substantive testimony.

The court was correct in that ruling, for there was enough to show surprise on account of the previous contradictory statement and the testimony given on the witness stand was damaging to appellee's case, which gave appellee the right to impeach him by proof of contradictory statements.   Kirby's Digest, § 3137.

The witness signed a written statement at the instance of the claim agent of the railroad company the next morning after the injury occurred, and that statement corroborates the statement in his deposition and contradicts the statement of the witness given at the trial.

Learned counsel for appellee insist that the witness, in the course of his testimony, verified the statement

given to the claim agent by stating that whatever he said at that time was true. Counsel argue this as being admissible under the rule of evidence which allows a witness who has no present recollection of the fact to testify as to the correctness of a contemporaneous memorandum made by him or made in his presence.

The rule of evidence contended for by counsel for appellee is correct and has been approved by this court. *St. Louis Southwestern Ry. Co.* v. *White Sewing Machine Co.,* 78 Ark. 1. But we are of the opinion that it has no application to this case, for the reason that a careful analysis of the testimony of the witness shows that he did not testify that the former statement favorable to appellee's cause of action was true. There are some expressions in his testimony which might be so construed, but when taken all together his examination shows distinctly a repudiation of the truth of the former statement and the assertion that the facts related on the witness stand concerning the manner in which the injury occurred was a correct statement.

We think that the court was correct in limiting the former statements to the purposes of contradiction only, and not allowing it to go to the jury as substantive evidence.

Without substantive force being given to the testimony of witness Young, the evidence is insufficient to show that the injury to Caver resulted from the insecure condition of the track.

The theory of appellee is that Caver stepped into the gully, which was about twelve feet from the frog, and was dragged that distance and run over.

Leaving out the testimony of Young, we find no testimony at all which would warrant the jury in finding that he stepped into the gully or between the uneven ties, and on that account was thrown down and run over.

The evidence tends to show, as before stated, that he fell under the cars right at the frog, and was run over. It is purely a matter of conjecture how he came to fall under the cars. Juries are not permitted to rest a ver-

dict purely upon speculation, but there must be testimony which warrants a finding of the essential facts or which would warrant a reasonable inference of the existence of those facts. Language used by this court in the case of *Walker* v. *Louis Werner Sawmill Co.,* 76 Ark. 436, is peculiarly applicable. It was there said:

"We know that his injury was caused by his falling, but no one can say from the evidence what was the cause of his falling. \* \* \* For aught that the proof shows to the contrary, appellant's fall may have been the result of accidental misstep, not caused by any of the things charged as negligence in the company. \* \* \* The whole matter was left to conjecture, and in such case the inference from the undisputed evidence most favorable to appellee must be taken, for appellant has the burden."

To the same effect see the recent case of *Denton* v. *Mammoth Spring Electric Light & Power Co.,* 105 Ark. 161, 150 S. W. 572.

The late Justice Brewer, in the case of *Patton* v. *Texas & Pacific Ry. Co.,* 179 U. S. 658, speaking for the Supreme Court of the United States, said:

"It is not sufficient for the employee to show that the employer may have been guilty of negligence—the evidence must point to the fact that he was. And where the testimony leaves the matter uncertain and shows that any one of a half dozen things may have brought about the injury, for some of which the employer is responsible and for some of which he is not, it is not for the jury to guess between these half a dozen causes and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion."

Learned counsel for appellee rely, in support of their contention that the evidence was sufficient, upon the recent case of *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Hempfling,* 107 Ark. 476, and the case of *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Owens,* 103 Ark. 61.

In those cases the rule just stated was clearly recog-

nized; but another rule, equally reasonable and well settled, was stated to the effect that, where it is not purely a matter of conjecture, even though the injury might have occurred in different ways, it should be left to the jury to draw the reasonable inference from the testimony as to the manner in which it occurred. While the jury could not indulge in pure conjecture, they could determine the weight of the circumstances and determine what inference should be drawn therefrom. In both of those cases we reached the conclusion that the circumstances were such that, while the cause of the injury was not free from doubt, they were sufficient to warrant the jury in drawing the inference that the injury resulted from the negligent acts of the railroad companies.

In the present case, however, we are unable to discover any evidence which would warrant the jury in drawing an inference as to the cause of deceased falling under the car. The jury had no right to assume, in the absence of testimony, that he stepped into the hole and was unable to extricate himself before the car struck him. There is no evidence that he fell into the hole or got into the defective part of the track. The evidence does not show when he fell under the car. Nor is there any evidence that he got his foot hung in the frog, and for that reason was run over by the train.

We repeat that it was purely a matter of conjecture, and that the evidence is entirely insufficient to warrant the verdict of the jury.

There is one other question which, in view of the fact that the case may be tried again, we deem it proper to discuss.

It is alleged in the complaint that appellant is an interstate carrier, engaged in interstate commerce, and that Caver was engaged in handling interstate cars at the time he received his injury.

This brought the case within the terms of the Employer's Liability Act of Congress, and characterized it as an action to recover under that statute.

In the answer, appellant denied that Caver was engaged in interstate commerce, and the proof fails to sustain the allegation of the complaint in that regard. Appellee's counsel concede that there is no proof that deceased was engaged in interstate commerce at the time.

When the court came to instruct the jury, appellant asked for a peremptory instruction to the jury on the ground that appellee had alleged, but failed to prove, that deceased was engaged in interstate commerce. This was the first time during the trial that appellant had raised that question.

It is insisted now, that, appellee having sued under the Employer's Liability Act, he can not recover in this action under the laws of the State of Oklahoma for an injury which occurred while deceased was engaged in intrastate commerce.

Facts which give the right to recover under the State law, and those which give the right to recover under the Federal statutes, constitute separate and distinct causes of action, for the Federal statute is exclusive where the incident is embraced within interstate commerce service, and does not apply where it is in intrastate service.

The two causes of action may, however, be joined in the same complaint. Kirby's Digest, § 6079 (subdiv. 6).

There can not, however, be a recovery upon a cause of action other than that stated in the pleadings and upon which the issue is joined. *Patrick* v. *Whitely,* 75 Ark. 465; *St. Louis, San Francisco & Texas Ry. Co.* v. *Seale,* 229 U. S. 156.

A change in the cause of action may, however, be waived. *Sarber* v. *McConnell,* 64 Ark. 450.

Our statute on the subject of amendment of pleadings is very liberal, and provides that "the court may, at any time, in furtherance of justice, and on such terms as may be proper, amend any pleadings or proceedings by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations

material to the case; or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved.'' Kirby's Digest, § 6145.

Under this section the court may, in its discretion, before the commencement of the trial, allow a complaint to be amended so as to change the cause of action to another one which might have been joined in the same action; and at any time during the progress of the trial may permit an amendment which does not change substantially the claim, so as to conform to the facts proved. The only limitation in the statute is that, after the proof is introduced, the pleadings can not be amended so as to substantially change the cause of action.

It is unnecessary to determine now, in view of the fact that the case is to be reversed on another ground, whether appellant waived the change in the cause of action, or whether the error in allowing the change was prejudicial so as to call for reversal of the case. On the remand of the cause the appellee can, if so advised, amend the pleadings so as to state a cause of action based upon intrastate service of the deceased, and thus make out a right of action under the State law.

There are other questions presented now which, in view of the reversal of the case on other grounds, we do not deem it necessary to discuss. These questions will probably not arise again in this case.

On account of the insufficiency of the evidence, the judgment is reversed and the cause is remanded for a new trial.