St. Louis, Iron Mountain & Southern Railway Company v. Belcher.

Opinion delivered April 5, 1915.

1. Railroads—personal injury action—uncontradicted testimony. —In an action for damages growing out of personal injuries, when the testimony of the engineer and fireman is reasonable and uncontradicted, the jury has no right arbitrarily to reject.

2. Verdict—basis of—duty of jury.—Juries are not permitted to rest a verdict purely upon speculation; there must be testimony which warrants a finding of the essential facts, or which would warrant a reasonable inference of the existence of those facts upon which liability is predicated, before a verdict will be permitted to stand.

Appeal from White Circuit Court; *J. M. Jackson,* Judge; affirmed.

STATEMENT BY THE COURT.

The appellee, in her own behalf and as administratrix of the estate of James Belcher, deceased, and in behalf of Viola and Esther Belcher, minors, instituted this suit against the appellant, alleging that plaintiff's intestate was sitting upon the ends of the crossties upon which defendant's track was laid a short distance from the town of Kensett; that defendant's servants negligently ran a train at a high rate of speed over said track without ring-

ing the bell or blowing the whistle, and without keeping
a lookout; that the train ran over and so badly injured
James Belcher that he only lived for the space of about
two hours.

The defendant denied the allegations of negligence
and set up the affirmative defense of contributory negli-
gence on the part of plaintiff.

The defendant's track for a quarter of a mile north
and for a mile or a mile and a half south of the station
of Kensett was perfectly straight and level.

The proof tended to show on behalf of the plaintiff
that the deceased Belcher had walked down the track of
defendant about half a mile from Kensett, had crossed a
trestle on the track and was seen sitting on the track fac-
ing toward the south some time before the train came
which struck him.   The tracks there at that point ran
north and south and Belcher had his left side and back
toward the way the train came; his side was turned to-
ward the north; the guard rails on the ties of the trestle
were about eight inches wide and four inches thick and
were laid flat upon the ties, and each tie notched in it,
leaving about two inches sticking out; it was a bright,
clear day, and there was nothing to obstruct the view.   It
was shown by several witnesses that if the engineer and
fireman had been keeping a lookout they could have seen
Belcher, if he was sitting on the track at the time, from a
mile to a mile and a half before they got to him.   One of
the witnesses on behalf of the plaintiff testified as fol-
lows:

"You can not place a man on that trestle and place
a man on the track with half an eye that could not see
him; I know right where this man was sitting on the end
of the ties; I could have seen him; I saw one of my shoats
on the track for a mile below the depot this morning; the
shoat was away from the track and walking around about
twelve or fourteen feet from the track."

This witness was asked the following question: "You
don't know what a man could see from his position in the
cab?" and answered:   "No, sir; but I know that I could

surely see a man on the trestle." He was further asked, "You mean standing up?" and answered, "No, sir; lying down."

There was also testimony on behalf of the appellee tending to prove that the train that injured Belcher was an extra train running at a time when no trains were operated or expected over the road, and that the train at the time did not ring the bell or blow the whistle as it approached the crossing; and that the train was running about thirty to thirty-five miles an hour when it passed the depot.

The testimony of the appellant, on the other hand, tended to prove that the regular signals were given by blowing the whistle and ringing the bell as the train approached the public crossing at Kensett, and that the engineer and fireman were keeping a lookout all the time until they passed the town of Kensett; that when they first discovered a man on the track, the train was about two hundred feet from him. The engineer stated: "I could not see him any sooner than I did; I saw him rise up, that is how I come to know somebody was there; just as soon as I saw it was a man, I went to the emergency brake, shut off the steam, sounded the emergency whistle and tried to get him to move so he would not get struck; there was nothing else that I could have done to avoid injuring him; the man was ten or fifteen feet from the end of the trestle, the trestle is about fifty-six feet long, there is a dump board at each end of the bridge to keep the dirt from washing down under the bridge about sixteen inches high, and extends about four inches above the ties; it extends up to the ends of the bridge, and this man was sitting on the first tie off the end of the bridge and his legs and body were down below the dump board." The witness then indicated to the jury how the man was sitting, stating: "He was leaning over this way, and that would leave his back about level with the top of the bridge, all I could see was just the top of his back; I just saw it was a white object; he had no coat on and it looked just about like a piece of paper; I kept a constant lookout

through the town of Kensett and up to the time I discovered Mr. Belcher, and did all in my power to avoid injuring him after I discovered him." This witness then testified that he accompanied one Williams and Jim Winn and showed them where and how Belcher was sitting for the purpose of enabling them to make tests to show how far witness could see a man. The fireman's testimony corroborated that of the engineer. He was asked if there was anything except the dump board to prevent him from seeing Belcher, and answered that there was a guard rail on top of the trestle about two and a half inches above the dump board and about five inches above the tie that the man was sitting on; that the guard rail was six inches thick and mortised in the ties about an inch; witness was seated about seven feet above the level of the tie that Belcher was sitting on; the guard rail prevented witness from seeing a part of his body; witness stated: "The way Belcher was sitting there, with his feet down in the hole, you could see just the top of his back."

It was stated by witnesses on behalf of appellant that a train of the size of the train that injured Belcher running at a speed of twenty-five miles an hour could only be stopped in 700 feet from the time efforts were made to stop it. Witnesses who made tests under substantially the same conditions as were shown to exist at the time Belcher was injured testified corroborating the testimony of the engineer and fireman to the effect that a man sitting on the track, in the position in which they stated that Belcher was sitting on the day he was injured, could not be seen by the engineer and fireman in the cab of the engine until they had approached to within a distance varying from 375 to 209 feet.

One of the witnesses on behalf of the appellee testified as follows: "There was no reason why a man sitting on the trestle a quarter of a mile south of the depot could not be seen from the top of this rise, half a mile north of the depot; there is nothing in the way to obstruct the view if the engineer had been looking." Other witnesses who testified substantially to the same effect, tes-

tified on cross-examination that they had never been in a cab and did not know whether a man, in the position that the engineer and fireman described Belcher as being in at the time of his injury, could be seen or not.

It was shown in rebuttal by the appellee that on the day that Belcher was injured, he was wearing a light blue shirt and a white hat.

The appellant asked the court to direct the jury to return a verdict in its favor; the court refused and submitted the issues to the jury upon instructions given at the instance of the plaintiff, to which no exceptions were saved. The jury returned a verdict in favor of appellee in the sum of $5,000, and from a judgment for that sum, this appeal has been duly prosecuted.

*E. B. Kinsworthy, P. R. Andrews* and *T. D. Crawford,* for appellant.

The amended lookout statute does not make the carrier liable for failure to discover the peril of a person on the track in all cases. Recognizing the physical limitations upon the ability of the engineer and fireman to discover persons upon the track, the Legislature in the enactment merely required that they exercise "reasonable care" to discover persons in danger. Here the testimony of the engineer and fireman was clear, consistent and probable and showed that they were keeping the lookout required by law and that they could not and did not discover Belcher until it was too late to prevent the injury. The jury could not arbitrarily disregard their testimony and base a verdict upon what was at best mere conjecture. 113 Ark. 353; *St. Louis, I. M. & S. Ry. Co.* v. *Enlow,* 115 Ark. 584; 101 Ark. 532; 109 Ark. 214.

*S. Brundidge, Jr.,* for appellee.

The duty of the carrier is to keep a constant lookout for persons and property, etc. The "reasonable care" required is to prevent injury after discovering the peril. As to whether or not appellant's employees were negligent in the matter of keeping the lookout was a question for the jury under the evidence and proper instructions,

and that question has been decided adversely to appellant. 165 S. W. 951; *Id.* 949. There was no occasion for speculation or conjecture in arriving at this verdict.

WOOD, J., (after stating the facts). The appellant contends that the court erred in not granting its prayer for a directed verdict. This court has held in several cases that where the testimony of the engineer and fireman is reasonable and uncontradicted, the jury have no right arbitrarily to reject it. *St. Louis, I. M. & S. Ry. Co.* v. *Humbert,* 101 Ark. 532, and cases there cited. It is also a well established doctrine, often recognized by this court, that juries will not be permitted to rest a verdict purely upon speculation, that there must be testimony which warrants a finding of the essential facts, or which would warrant a reasonable inference of the existence of those facts upon which liability is predicated, before a verdict will be permitted to stand. *St. Louis, I. M. & S. Ry. Co.* v. *Enlow,* 115 Ark. 584; *Midland Valley Rd. Co.* v. *Ennis,* 109 Ark. 206. See also *St. Louis, I. M. & S. Ry. Co.* v. *Hempfling,* 107 Ark. 476; *St. Louis, I. M. & S. Ry. Co.* v. *Owens,* 103 Ark. 61; *Russell* v. *St. Louis S. W. Ry. Co.,* 113 Ark. 353; *Biddle, Recr.,* v. *Jacobs,* 116 Ark. 82. Counsel for appellant cite and rely upon some of these cases, but they have no application to the facts of this record; for the reason that here there was a conflict in the testimony, and the jury accepted the testimony on behalf of the appellee. Giving this testimony the strongest probative force, it was sufficient to warrant a finding that, if the engineer and fireman had been keeping the lookout required by law, they could have discovered Belcher's peril in time to have prevented injury to him by the exercise of ordinary care after discovering his peril. True, the engineer and fireman testified roundly that they were keeping a lookout and that, on account of the position which Belcher had assumed on the track, they were unable to discover that he was a human being, and in a perilous situation, in time to stop the train before the same ran upon him; but the testimony of the wit-

nesses for the appellee was sufficient to warrant a finding to the contrary.

It is unnecessary to discuss the evidence in detail; the facts as set forth in the statement speak for themselves. It can not be said that the jury arbitrarily disregarded the testimony of the engineer and fireman. Their verdict had substantial evidence to rest upon in the testimony of witnesses on behalf of appellee, and was not a mere matter of conjecture or speculation. The case, upon the facts of this record, is ruled by the recent case of *St. Louis, I. M. & S. Ry. Co.* v. *McMichael,* 115 Ark. 101, 171 S. W. 115, rather than by the ones cited by appellant.

The court, therefore, did not err in refusing appellant's prayer for a directed verdict, and the judgment is affirmed.