WALLOCH *v.* HEIDEN.

Opinion delivered January 13, 1930.

*Frank B. Pittard* and *Jacoway, Miles, Donham &
Fulk,* for appellee.

*Floyd L. Brown* and *T. N. Robertson,* for appellant.

BUTLER, J., (after stating the facts). The appellant
complains, first, of the giving of instruction No. 4, as
follows: "The court instructs the jury that if you find
from the evidence that neither the plaintiff nor defend-
ant was guilty of negligence, as defined in other instruc-
tions, but that the injury was the result of accident, then
your verdict will be for the defendant."

Appellant contends that this instruction presented a
question not within the issues raised by the pleadings,
and that there was no evidence upon which the instruc-
tion might be based, and that it was therefore abstract,
and tended to confuse the minds of the jury, and to divert
their minds from the proper consideration of the real
issue. The testimony on the part of appellee tended to
establish the fact that the swimming pool had been main-
tained for about two months only before the injury to
Wesley Walloch, and within that time he had visited the
pool and gone swimming four or five times; that he was
an expert swimmer and diver, and was acquainted with
the particular part of the pool at which he was later in-
jured, which was brilliantly lighted, and that on the even-
ing in question he had dived several times, at or near
the place of the injury. This testimony was given by
James Fisher and others, Fisher stating, in answer to
question, that he had seen Wesley dive off the landing
where he was hurt the night of the injury, but did not see
him dive at the time the injury occurred. There was also

testimony tending to show that at the time of, and immediately before, the injury, the pool was being refilled, but that a considerable part of the bottom of the pool at the shallower end had not yet been covered by water, which was entering the pool from a nearby reservoir and making a loud roaring noise; that, after leaving the smaller pool containing the toboggan slides and entering the larger pool, Wesley disported himself for a time with some young girls, and at that time there were more than a hundred people in the pool, diving into the deeper water and swimming and wading around near where the injury occurred. There was also testimony to the effect that Wesley Walloch, before then, and on that evening, had dived in that part of the pool where the water was normally ten feet deep; that afterward he proposed doing some stunts for the instruction and entertainment of the girls, and was warned by his companion, Leonard, that he should not do so, because the water was too shallow.

Miss Helen Mack testified that she and a young lady companion, on the evening in question, were at the pool engaged in diving into the deep water, and, while so engaged, Wesley Walloch came to where they were, and began to make fun of the way in which they were diving, and proceeded to demonstrate how to dive and swim. After this, while witness was still in the deep water, she saw Wesley go out upon the board from which he dived, receiving his injury. Witness described his actions at the time he was in the act of leaving the board for the plunge into the water, stating that, ''he put his hands upon his hips as though he was going to dive and it looked like he thought better of it—looked like it was between jumping and diving—looked to me like he jumped off and fell off.'' In answer to a question as to whether or not he had his hands on his hips, witness answered, ''It looked like he was posing.'' And she was caused to notice by his looking and winking at her. On cross-examination witness stated in answer to question as to whether or not she had seen Wesley on the board, and as to her statement that he dived or fell off, that,

"It looked like he didn't know what to do; he changed his mind—didn't know whether to dive or jump. It looked like he did both."

The testimony of this witness was introduced without objection, and at the conclusion of the testimony the court gave, on its own motion, instructions Nos. 1 and 2, as follows:

"1. You are instructed in this case that it was the duty of the defendant, operating a swimming pool and equipment for hire, to exercise ordinary care to maintain the same in a reasonably safe condition for the uses and purposes to which it was to be put. If you find from the testimony in this case that the defendant negligently failed to maintain the pool in its depth of water, so as to be reasonably safe for the users of the equipment and pool by reason thereof, plaintiff, while in the exercise of ordinary care for his own safety, was injured, your verdict will be for the plaintiff."

"2. If you find in this case that the equipment as used on this pool, together with the depth of the pool at the time the plaintiff was injured, was dangerous because of the depth of the water, then it was the duty of the defendant to exercise ordinary care to warn the plaintiff of such dangers, if any, in using said pool in its condition, and if you find in this case that the defendant negligently failed to give such warning, and by reason thereof plaintiff was injured while in the exercise of ordinary care for his own safety, provided, if you further find that he himself was not aware of the danger or depth of the pool, or that it was not apparent to an ordinarily prudent person of his age and experience, then your verdict will be for the plaintiff."

By these instructions the question of the negligence of the defendant was submitted to the jury, which instructions, it is conceded, were warranted by the testimony in the case. We do not think that instruction No. 4 set out above was in conflict with these instructions, as contended by the appellant. The effect of instruction

No. 4 was merely to tell the jury that if the injury could not be attributed to the negligence of the defendant, there could be no recovery.

In the case of *LaGrande* v. *Arkansas Oak Flooring Co.*, 155 Ark. 585, 245 S. W. 38, where the action was for damages for personal injuries, received on account of the alleged negligence of the defendant in failing to furnish plaintiff a safe place to work, and in failing to make proper inspections of the equipment, and where the defense set up was contributory negligence and assumed risk, an instruction similar to the one challenged, *supra*, was held to be applicable to the facts, and within the issues. Plaintiff was a workman in the employ of the defendant, and at the time of his injury was engaged in putting boards on the table for the ripsaw. He was injured by the breaking of a belt, some fourteen or fifteen feet away, which belt struck the plaintiff in the eye putting it out. The breaking of the belt was said to have been caused by the negligence of the defendant in using an old belt, without the protection of any safety device by which the belt would have been prevented from flying off, if broken, and that, if such appliance had been provided, the injury would not have occurred. It was contended, further, that there had been no inspection made of the belt, which inspection, if made, would have resulted in the discovery that the belt was old and dangerous. There was testimony on the part of the defendant tending to show that the injury was not due to the breaking of the belt, and that such break was ordinarily incident to the employment of the plaintiff, and was a risk assumed by him.

The issues in that case were not essentially different from those in the case at bar. The evidence of the witness, Helen Mack, together with all the circumstances in the case, might reasonably have led to the inference that when Walloch went out upon the springing board he was acquainted with the shallowness of the water, but that the girls had distracted his attention and caused him to forget for a time the true situation, and that he at first

intended to further demonstrate his skill to the girls, and prepared to leap for the dive in the usual manner, when, suddenly remembering that the water was shallow, he attempted to change the manner of his dive so as to make it safe, and in doing so made an awkward movement by which his entry into the water was in a manner undesigned and unexpected by him. For, it resulted in an injury not only to his head but also to his heels, which were shown to have been injured. Which struck the bottom of the pool first can only be a matter of conjecture.

An "accident" is defined by the lexicographers as the "sudden happening of an undesigned event with unexpected results." This is one of the definitions which has been approved by the courts. Some have stated an "accident" is "an event happening without the concurrence of the will of the person by whose agency it was caused;" others as "an undesigned contingency—a happening without intentional causation." Walloch testified that he could dive with safety in water of the depth contained in the pool at the time of his injury, and the jury might have inferred from the evidence that in the act of diving he attempted to change the manner of his dive and, because of this, entered the water in an undesigned and unexpected manner, by reason of which his injury resulted. This, of course, was an accident, and if there was no negligence on the part of the defendant, there could be no recovery.

We do not undertake to say that the giving of the instruction complained of, in view of other instructions given, was necessary for the proper determination of the issues involved, but we cannot see where any prejudice could have resulted to the rights of the appellant. Moreover, as there was no objection to the testimony of Miss Mack, *supra,* as we have frequently held in such cases, the pleadings should be treated as amended to conform to the proof.

The next assignment of error is that the court erred in giving instruction No. 6, as follows: "The jury is further instructed that it was the duty of Wesley Wal-

loch to exercise ordinary care for his own safety when diving into said pool, and if the jury believe from the evidence that the plaintiff, Wesley Walloch, saw or might, by the exercise of ordinary care, have seen the danger, if any, incident to diving into said pool, but that he negligently failed to do so and thereby caused or contributed to his own injury, then your verdict will be for the defendant." It is contended that this instruction is inapplicable to the evidence in the case, and in conflict with instructions Nos. 3 and 4 given by the court, as follows:

"3. It was not the duty of the plaintiff, Wesley Walloch, in the exercise of ordinary care for his own safety, to make an inspection of the pool to determine the depth of the water and the danger of diving into the pool."

"4. The plaintiff, Wesley Walloch, can only be charged with such knowledge as to the depth of the water, and the danger of diving into the pool as was actually known to him, or that was so open and patent that an ordinarily prudent person of his age, knowledge, and experience could not have failed to observe."

Instead of instruction No. 6, *supra,* being in conflict with instructions Nos. 3 and 4, *supra,* we think these instructions explain and limit the expression "ordinary care," as contained in instruction No. 6. By instruction No. 3 the jury were told that it was not the duty of Wesley Walloch, in the exercise of ordinary care, to make an inspection of the pool, and in instruction No. 4, that the ordinary care, which he was bound to exercise, was limited only to such facts as were within his actual knowledge, and to such other facts as were so patent and obvious that a person of his age, knowledge and experience could not have failed to observe. Instruction No. 6 might well have stated that the ordinary care required of Walloch was to take cognizance of facts within his actual knowledge, or which were so apparent that one of his age, knowledge and experience could not have failed to observe; and doubtless, had the court's attention been called by specific objection to the instruction, as written,

and this limitation suggested, the court would have clarified same in these particulars. But, as we have seen, the instruction, as given, taken in connection with instructions Nos. 3 and 4, fully advised the jury as to what, and what only, were Walloch's duties in the exercise of ordinary care. We think the testimony was sufficient to warrant the giving of this instruction.

It is next contended that the court erred in giving instruction No. 10, which is as follows: "You are instructed that, if you find from the evidence in this case that the depth of the water was visible and apparent to patrons by ordinary prudence, of the age and maturity of the plaintiff, then you are instructed that the defendant was under no obligation to warn plaintiff of the depth of said water, and his failure to do so would not constitute negligence on his part." This instruction merely told the jury that it was not necessary to apprize the appellant of the danger which was so apparent that any one of his age, experience, and prudence would have seen and appreciated such danger at a glance. The court had told the jury that it was the duty of the appellee, if the equipment used and the depth of the pool at the time of appellant's injury was dangerous because of the condition of the water, to warn appellant of such danger in using the pool, unless the appellant himself was aware of the depth of the pool and the danger incident thereto.

In the case of *Johnson v. Hot Springs Land & Improvement Co.*, 76 Ore. 333, 148 Pac. 1137, L. R. A. 1915F 689, the court said: "One of the objections of the rule requiring the owner of a place of amusement like the one maintained by defendant to warn patrons of danger is to acquaint the patron with the hazard so that he may avoid injury. If the deceased had knowledge of the shallowness of the water, and the danger incident to diving from the springboard, then he knew all, and no less than he could have known had defendant expressly warned him of the risk. If the defendant had in fact cautioned Johnson against the peril, and, notwithstanding the warning, the latter dived off the springboard, then, on the facts of

the instant case, the defendant would not be liable because of the knowledge imparted to Johnson; and so, too, the same result follows if Johnson did in fact know of the danger, even though not told by the defendant. If, with knowledge of the danger, Johnson placed himself in peril, and on account thereof was injured, he was chargeable with contributory negligence.''

The instruction on the duty of warning given at the request of the appellant, and instruction No. 10, fairly and properly presented the several theories of the appellant and appellee.

It is insisted, also, that error was committed in permitting counsel for the appellee to ask the appellee, while on the witness stand, the following question: ''Do you know of any reason why any person could not observe the depth of the water,'' and in permitting the witness to answer, ''I don't know of any reason.'' The appellee had already narrated the conditions existing at the pool as to the quantity of water, number of people, lights, equipment, *etc.*, at the time of his injury, and his answer to the question propounded by counsel was but a statement of a fact based upon the facts, as previously stated by him, and upon the fact that he was constantly observing the condition of the water and the general situation. While the testimony is negative in its character, this does not render it incompetent, the only requirement being that the witness should have been so situated that he would, in the ordinary course of events, know all of the particular attendant circumstances. *Ft. Smith & Western Ry. Co.* v. *Messeck*, 96 Ark. 243, 131 S. W. 686; 1 Wigmore on Evidence, § 664.

It is finally contended that the verdict is clearly against the preponderance of the evidence. This, if true, is not sufficient to warrant this court in setting aside the verdict, for the rule often announced is that, where there is any substantial testimony upon which the verdict might be based, it will not be disturbed. While the testimony in this case is conflicting on many material points, we think there is substantial evidence to sustain the verdict

of the jury. Finding no error on the whole case, the judgment must be affirmed.

HUMPHREYS, MEHAFFY and KIRBY, JJ., dissenting.