St. Louis-San Francisco Railway Company *v.* Bishop.

Opinion delivered November 24, 1930.

E. T. Miller, E. L. Westbrooke, Jr., and E. L. Westbrooke, for appellant.

G. L. Grant and Pace & Davis, for appellee.

MEHAFFY, J. This suit was instituted in the Lawrence County Circuit Court by the appellee, Mrs. Orel Bishop, as administratrix of the estate of B. Bishop, deceased, under the Federal Employers' Liability Act to recover damages for the death of appellee's husband, who was injured and killed about one mile north of Seligman, Missouri, about 12:32 in the morning of July 4, 1928, while in the service of appellant as a brakeman and while in the performance of his duty as such brakeman on one of appellant's freight trains engaged in interstate commerce. The suit was for the loss of contributions and maintenance and for pain and suffering endured by deceased from the time of the accident until his death.

The following facts are undisputed: Deceased, B. Bishop, was 31 years old, physically strong, weighed about 160 pounds, was a careful, good brakeman and a good man. After leaving Butterfield, Bishop, who was riding in the caboose with the conductor and another brakeman, left the caboose when the train got near Seligman, which was the next stop, and started to the head end of the train to help set out some cars. This was in the line of his duty, and he was seen on the third car ahead of the caboose, and when the train got to Seligman Bishop was not seen and the train went on to Rogers, Arkansas, where some cars were to be set out, and it was then discovered that Bishop was not on the train. A search was made for him, a report made to the dispatcher at Rogers

and the mangled body was afterwards found about a mile from Seligman. The body was on the outside of the east rail, and there were finger prints as if he had been crawling, and there was blood found on the wheel and front part of the fourth car of chat, the fourth car from the caboose. In going from the caboose to the front end of the train, where he had to go in the performance of his duties, he would go over the cars which were filled with chat and go from one car to another. The cars had ladders and grab irons. He was killed by the operation of the train while in the performance of his duty.

There is a conflict in the evidence as to the negligence of the appellant and as to whether the grab iron was defective or bent. Witnesses for appellee testified that the grab iron on the front of the fourth car from the caboose was defective and bent, it was bent towards the car so that there was very little space between the grab iron and the body of the car. Witnesses for appellant testified that the grab iron was not bent or defective. All the witnesses, however, agree that it was at this place where the appellee's witnesses say there was a defective grab iron that Bishop fell from the train and was run over and killed. There is no dispute about the blood being on the wheel just behind this grab iron.

Appellant introduced a blue print and a witness testified that the tracks of Bishop could be seen in the chat going the length of the car, and these tracks are shown on the diagram to start at the corner of the car, getting into the middle and walking in the direction the train was going to the far end of the car, and then the deceased would go over from this car to the next and the tracks were shown on the first, second, third and fourth cars loaded with chat.

The negligence alleged and relied on is that the bottom side grab iron on the east side of the car at the end of the car was defective and bent and that this defect in the grab iron was the cause of the fall, injury and death of deceased. The evidence as to whether there was a

bent and defective grab iron is conflicting. A number of witnesses testified that the grab iron was bent in towards the car, bent in the middle, some of them testifying that it was so bent that it did not stand out more than an inch from the body of the car, and others testifying that it was bent in towards the car an inch and a half. Appellant's witness who examined the grab iron testified that the grab iron was not bent and was not defective in any way. As to whether the grab iron was bent and defective was a question for the jury. This court does not pass on the credibility of the witnesses nor the weight to be given to their testimony. This is the province of the jury. The finding of fact on conflicting evidence by a jury will not be disturbed by this court if there is substantial evidence to support the finding. *St. L.-S. W. Ry. Co.* v. *Burford*, 180 Ark. 562, 22 S. W. (2d) 378; *Consolidated School Dist. No. 1* v. *Fitzgerald*, 180 Ark. 840, 23 S. W. (2d) 263; *Walloch* v. *Heiden*, 180 Ark. 844, 22 S. W. (2d) 1020; *Boddy* v. *Thompson*, 179 Ark. 71, 14 S. W. (2d) 240; *Gurdin* v. *Fisher*, 179 Ark. 742, 18 S. W. (2d) 245. In returning a verdict in favor of appellee, the jury necessarily found that the grab iron was defective. Appellant earnestly insists that the evidence is insufficient to show that the alleged defective grab iron contributed to Bishop's death so as to permit a recovery under the Federal Employers' Liability Act. This is the important question in the case, and one that has given us much concern. The deceased was a young man, 31 years old, in perfect health, was careful and understood his duties, and how to perform them. The presumption is that he was performing his duties in a careful manner, that he was not guilty of negligence. He was swing brakeman and was in the caboose. There was some switching to be done at Seligman and it was the duty of Bishop to go to the front end of the train before the train reached Seligman. He was performing this duty when he was killed. There was no way he could go from the caboose to the front end of the train while the train was moving, except to go over

the cars that were loaded with chat. He would necessarily have to pass from one car to the other. The presumption, in the absence of evidence, would be that he did this in the proper manner. There is conflicting evidence as to the proper way to cross from one car to the other and as to how he probably crossed. A blue print is in evidence showing footprints in the chat. It is claimed that these footprints were made by the deceased.

A witness named Erbright, a brakeman who was in the caboose with Bishop, and who saw Bishop when he started to the front end of the train, saw him on the car of chat, testified that after they had done their work at Seligman and had gone on to Rogers, Arkansas, and had looked for Bishop and failed to find him, he, witness, went back to the extreme north end next to the caboose, walked from the rear of the car, crossing from car to car toward the engine, and noticed that there were his tracks going across this chat, this loose gravel. No one except witness Erbright saw Bishop after he left the caboose, and he testifies that Bishop got out of the caboose as they were nearing Seligman, and said he was going to the head end to help set out two cars. Witness saw him on the third car of chat ahead of the caboose. This is the last time he was seen alive. This suit, as contended by appellant, is brought under the Federal Employers' Liability Act, and the questions of negligence and the evidence necessary to establish negligence must be solved according to the rules laid down by the Federal courts. We said in a case recently decided by this court: "This suit is brought under the Federal Employers' Liability Act, and, since this act does not define negligence, the question whether the acts complained of amounted to negligence is to be determined according to the common law and according to the rules prevailing in the Federal courts as to what constitutes negligence under the common law. However, there is no difference between the decisions of the Federal court and of this court as to what constitutes negligence." *Mo. Pac. Rd. Co.* v. *Skipper,* 174 Ark. 1083, 298 S. W. 849.

Not only has the Federal court and this court adopted the same rule as to what constitutes negligence, but each court has held that verdicts of juries must have a more substantial basis than mere conjecture or speculation on which to rest. "It is a well-established doctrine, often recognized by this court, that juries will not be permitted to rest a verdict purely on speculation; that there must be testimony which warrants a finding of the essential facts or which would warrant a reasonable inference of the existence of those facts upon which liability is predicated before a verdict will be permitted to stand." *Texas Co.* v. *Jones,* 174 Ark. 905, 298 S. W. 342; *St. L. I. M. & S. R. Co.* v. *Belcher,* 117 Ark. 638, 175 S. W. 418; *St. L. I. M. & S. R. Co.* v. *Enlow,* 115 Ark. 584, 171 S. W. 912; *Midland Valley Ry. Co.* v. *Ennis,* 109 Ark. 206, 159 S. W. 214. We also said in the *Texas Co.* v. *Jones* case, *supra*: "The mere fact that plaintiff was injured while working for the defendant and while in the exercise of due care himself is not sufficient to justify a verdict against the defendant. There must be some evidence of the negligence of the defendant and that that negligence caused the injury." Under the decisions of this court and under the decision of the Federal court, it is necessary for the plaintiff to prove, not only that the defendant was guilty of negligence, but the evidence must also show that defendant's negligence caused the injury. It is not necessary, however, that plaintiff show by direct evidence that defendant was negligent, nor is it necessary to show by direct evidence that defendant's negligence caused the injury. It is necessary that the plaintiff prove both the propositions by substantial evidence. This is the rule both in this court and the Federal court.

The evidence is that Bishop, the swing brakeman, just before the train got into Seligman, left the caboose for the purpose of going to the head end of the train and assisting in switching some cars. This was his duty, and he, of course, went over the tops of the cars which were filled with chat and reached the far end of the fourth car

from the caboose. There is some conflict in the testimony as to the manner in which he went over, but the undisputed proof shows that he was killed at the place where appellee's witnesses testified there was a defective grab iron. Witnesses found blood on the wheel just behind the grab iron, found blood on the journals and bottom part of the car, and all this blood was on the same side of the car where the witnesses testified there was a defective or bent grab iron. Deceased's body was found on the same side of the track where the blood was found, and where the bent grab iron was. Appellant's witnesses testify about looking for deceased after it was discovered he was not on the train, and examining the car, and other of appellant's witnesses testified as to inspecting the car, but none of them testify about the blood nor whether they looked for blood or not, except Erbright. He testified that he got under the car in the middle of the track and found three spots of blood on the bottom rod and on the side of the wheel. He does not say, however, which wheel nor where the rod was that had the blood on it, except he says he was in the middle of the track. The fact that Bishop was a careful man, strong and vigorous, and presumed to be in the exercise of care, went safely over the cars until he reached the place where the defective grab iron was said to be, and fell there on that side of the car, the fact that blood was found on the wheel and journal on that side, the fact that his body was found on that side and that there was no blood found on the other side, are sufficient to justify the jury in reaching the conclusion that the defective grab iron was the cause of his fall and injury.

"A well connected train of circumstances is as cogent of the existence of a fact as any array of direct evidence, and frequently outweighs opposing direct testimony." 23 C. J., p. 48.

"There must be legal evidence of every material fact necessary to support the verdict or finding, and such verdict or finding must be founded on a reasonable cer-

tainty as to probabilities arising from a fair consideration of the evidence and not a mere guess, or on possibilities. Proof of a fact need not, however, be made by any particular kind or class of evidence, but the tryers of fact may seek the truth within the field of the evidence to the utmost boundaries of reason which rational men of common sense might set without passing beyond the line of the field of possibilities and the field of conjecture.'' 23 C. J., pp. 52-53.

In cases of circumstantial evidence, the facts and circumstances proved must be such that it may be reasonably inferred from such facts and circumstances that the fact sought to be established exists.

This court has said: ''Hempfling was an experienced brakeman, in good health, strong and active. As one of the witnesses expressed it, he was a good, steady man, industrious, and kept at his work. It is not at all probable that such a man, pursuing his work in the usual way, would have fallen between the cars and lost his life if there had been the usual and customary safeguards provided by the appellant, and which were necessary to be provided for the protection of brakemen while crossing from one car to the other.

''While there was no eyewitness to the manner of Hempfling's death, it is certain that he came to his death by falling between the cars, and it is reasonably certain that he would not have fallen if the customary hand-hold for his protection had been provided. * * * The jury were not invited to guess, without any proof, as to the probable cause of Hempfling's death. The law is well settled that where there are no eyewitnesses to the injury, and the cause thereof is not established by affirmative or direct proof, then all the facts established by the circumstances must be such as to justify an inference on the part of the jury that the negligent conditions alleged produced the injury complained of. Where such is the case, the jury are not left in the domain of speculation, but they have circumstances upon which, as reasonable minds, they may

ground their conclusions. Negligence that is the proximate cause may be shown by circumstantial evidence as well as direct proof. * * * It will be sufficient if the facts proved are of such a nature and are so connected and related to each other that the conclusion therefrom may be fairly inferred." *St. L. I. M. & S. R. Co.* v. *Hempfling,* 107 Ark. 476, 156 S. W. 171.

The same rule was announced and approved in *Midland Valley Rd. Co.* v. *Ennis,* 109 Ark. 206, 159 S. W. 214.

This court, in discussing the scintilla rule, said: "While this rule is not to be ignored, it is equally well settled that any issue of fact in controversy may be established by circumstantial evidence where the circumstances adduced in evidence are such that reasonable minds might draw different conclusions therefrom." *St. L. I. M. & S. R. Co.* v. *Fuqua,* 114 Ark. 112, 169 S. W. 786; *Paragould & M. R. Co.* v. *Smith,* 93 Ark. 224, 124 S. W. 776; *St. L. I. M. & S. R. Co.* v. *Owens,* 103 Ark. 61, 145 S. W. 879.

The appellant insists that the court erred in giving the following instructions:

No. 1. "The court instructs the jury that in this case, if you find from a preponderance of the evidence that the deceased, B. Bishop, was injured, and as a result of said injuries thereafter died while in the employ of the defendant, St. Louis-San Francisco Railway Company, and while in the performance of his duty as a brakeman on one of its freight trains operating between Monett, Missouri, and Fort Smith, Arkansas, by falling from car No. 82302 near Seligman, Missouri, and that deceased was caused to fall by reason of a defective grab iron on said car, and that the condition of said grab iron was known to the defendant, or could have been known to the defendant, before the accident, by its making reasonable, careful inspection of the same before the injury, and that the condition of said grab iron was unknown to the deceased, B. Bishop, and that the said defendant, St. Louis-San Francisco Railway Company,

thereby was guilty of carelessness and negligence that caused the injury to the deceased, and that the defective condition of said grab iron (if you find the same was defective) was the proximate cause of the injury, and that the deceased was, at the time, exercising due care for his own safety and had not assumed the risk, you will be authorized to find for the plaintiff, and assess such damages as will compensate the widow and minor child of the deceased for said injuries to the deceased that resulted in his death, as set forth in other instructions given you in this case. And, unless you so find and believe, you will find for the defendant.''

No. 2. ''Negligence on the part of either the railroad company or the deceased might be defined to be the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what reasonable and prudent persons under the existing circumstances would not have done. You fix the standard for reasonable, prudent and cautious men under the circumstances of the case as you find them according to your judgment and experience of what that class of men do under these circumstances, and then test the conduct involved and try it by that standard.''

No. 3. ''Contributory negligence consists in doing something that an ordinarily prudent person would not do under the circumstances, or the failure to do something that an ordinarily prudent person would do under the circumstances by the party injured that directly contributed to the injury and without which the injury would not have occurred.''

No. 6. ''The burden of proof is upon the plaintiff to establish her case by a preponderance of the evidence, and the burden of proof is upon the defendant in this case to establish contributory negligence on the part of the deceased, B. Bishop, resulting in his injury, unless such negligence sufficiently appears from the proof introduced by the plaintiff.''

No. 7. "If the jury find for the plaintiff, they will assess damages for the widow, Orel Bishop, and the minor son, B. Bishop, Jr., at such sum of money as will fairly and reasonably compensate them for the loss of pecuniary benefits they might reasonably have received and of which they were deprived by the death of B. Bishop, as is shown from the evidence in the case, reducing said sum to its present cash value; also if you find for the plaintiff you will be authorized to assess further damages for the widow, Orel Bishop, and the minor son, B. Bishop, Jr., at such a sum as will reasonably compensate for the physical pain and mental anguish suffered and endured by the deceased as a result of said accident, if any, from the time of the alleged injury until his death, as may be shown by a preponderance of the evidence in the case."

No. 10. "Under the law of the State, it is provided that juries in civil cases may return a verdict when nine of the jury agree to that verdict, and in this case, if twelve of you agree upon a verdict, it is only necessary that the verdict be signed by one of you as foreman, but in the event the verdict is reached by nine of you, then it is necessary for each one of the jurors agreeing to that verdict to sign the verdict."

The objection urged to instructions is that there is no evidence upon which to base the instructions, and that it permits the jury to speculate and conjecture. We have already said that the jury was authorized to find that Bishop was killed by falling from the train at the place where appellee's witnesses testified there was a defective grab iron, and, if this is true, this disposes of appellant's objection to instruction No. 1.

Appellant's objections to instruction No. 2 and No. 3 and No. 6 are that No. 2 is not a proper definition of negligence under the Federal Employers' Liability Act, and that No. 3 and No. 6 improperly submitted to the jury the question of contributory negligence for the reason that the Federal Employers' Liability Act does not make

contributory negligence a defense. Of course, this being true, the submission of this question could not in any way prejudice the appellant. It simply tells the jury that appellant was entitled to a defense that it says it did not have. The specific objection to instruction No. 7 is that there is no evidence on which to base it, and that it permits the jury to speculate upon the cause of the accident and death. What we have said above disposes of this objection. Instruction No. 10 was a correct statement of the law, and appellant does not argue its objection. Appellant insists that the case should be reversed because witnesses were permitted to testify how far the grab iron was bent. The witnesses had not taken any measurements but testified that they saw the grab iron and as to how much they thought it was bent. Appellant says: "Guesses by witnesses who neither made measurements nor touched the alleged defective grab iron were erroneously permitted by the court to go to the jury." This evidence was competent. "Any person cognizant of the facts upon which he bases his judgment may give his opinion on questions of identification, size, weight, distance and time. Such questions are open to all men of ordinary information. The evidence is competent. Its weight is for the jury." *Railway Co.* v. *Thomason*, 59 Ark. 140, 26 S. W. 598.

Finally, it is insisted that the case should be reversed because the court erred in permitting certain questions in the cross-examination of witness Stanley. Attorney for appellee asked witness where he came from, and if he didn't know he didn't have to come, and a good many questions on this line, all of which were objected to by appellant. A witness on cross-examination may be asked any question which would tend to show his bias. This was evidently the purpose of the cross-examination of Stanley. The extent to which a cross-examination of this kind may be carried is largely within the discretion of the trial court. Unless it can be said that the trial court abused its discretion, this court will not reverse. We

find no reversible error, and the judgment is therefore affirmed.

Mr. Justice SMITH dissents.