St. Louis, Iron Mountain & Southern Railway Company *v.* Johnson.

Opinion delivered March 4, 1905.

Railroad—injury at crossing—negligence.—Evidence that plaintiff was injured at a crossing by a train backing slowly at night without lights or signals, and that before going on the track he both looked and listened and failed to discern the train's approach, will sustain a verdict in his favor.

Appeal from Nevada Circuit Court.

Joel D. Conway, Judge.

Affirmed.

### STATEMENT BY THE COURT.

On November 20, 1901, at Boughton, Arkansas, the appellee, Johnson, was struck by a moving train of the appellant railway company, and in consequence of his injury therefrom his right foot had to be amputated. He sued the company, charging negligence. It denied the negligence, and charged contributory negligence. The trial resulted in a verdict for $1,500, and the railway company appealed. Johnson was engaged in the mercantile business, having a store on the southeast side of the railroad track and right of way, which ran through the village of Boughton. On the evening in question Johnson, having business with some of the train crew on a passenger train known as No. 53, went from his place of business along a well-beaten and commonly used pathway to the depot. This path crossed the side track and main track of appellant's road. In order to let the "Cannon Ball" train pass, the passenger train No. 53 and a work train went into the side track. About the time Johnson started, No. 53 was backing out of the side track and coming back to the station on the main track.

The work train consisted of an engine, tender and two water cars. It was in the side track south of No. 53 when it was on that track; when No. 53 backed out north to get into the main track, where it would go south to the station, the work train also backed out north. This put the rear water car as the front of the moving train. The appellee's testimony tended to show that there was no light or switchman on this forward car, and that this train gave no starting or other signals, while backing out of the switch, up to the time it struck Johnson. The following extracts are taken from Johnson's account of the occurrence:

"Was it night?" "Yes, sir. Just as I got across the switch, save by the right foot, I was struck by the train, and didn't know any more." "Did you make any observation in the way of looking and listening?" "I certainly did, 1 certainly did." "You say you were looking and listening for trains?" "Yes, sir, that is one thing I always done. I always peeled my eyes and picked my ears when I was there." "You regarded that as a dangerous place?" "I certainly did, I certainly did." "You didn't see the train that struck you?" No, sir; no, sir; no, sir." On cross-examination, he said: "Which way did you look when you started to go across the track?" "It seems to me I looked. I tried to look every way." "What did you do after you started to go across the track?" "I looked with all the eyes I had." "Which way did you look?" "I think I looked up and down the track, both." "What did you see?" "I saw No. 53." "Where was No. 53?" "Standing on the main track, just about standing; it might have been moving a little." "How far from that were you?" "When I got struck, I was just in the act of heaving this foot over the rail." "How far was No. 53 from you when you crossed the track?" "It was about the width of the tracks between the switch and main track." He did not see the work train when it went in the switch or side track, and did not see it on the side track or at any time. He denied that he was watching No. 53, and did not on that account fail to look towards the work train, and denied that he stopped on or about the track. "When was the last time you looked to your left (in the direction of the work train) as you started on to that track?" "It must have been just as I entered the track. It seemed to me like I always did look." "We want to know what you did that night, not what you always do. Did you look in this direction, to your left, as you went on to

the track?" "I wouldn't be positive about that, but I know I had my eyes open." "As a matter of fact, you don't have any clear recollection of what you did do?" "Yes, sir, I recollect going out there; but after the train struck me I don't remember." "You don't remember what took place before you stepped on the track?" "No, sir." "You don't have any recollection of seeing the train?" "No, sir." "You had your eyes, and you think you might have looked?" "Yes, sir; I always did look." "You have no clear recollection of looking on that night?" "No, sir; only I know I went over there with that understanding always." "But you have no recollection now of looking that night?" "No, sir; not more than I generally do."

These excerpts present the crucial questions in his case, and they represent fairly his testimony as a whole.

Sutton, a witness for plaintiff, on cross-examination stated that at the time of the injury to Johnson it was not full dark, just dusk; that the outline of objects could be seen, but not so plainly as in daylight. He thought it light enough to see an object of the size of the car that struck Johnson a distance of 50 feet. The trains were lighted, and the trainmen carrying lanterns. Graham, a witness for the railway company, was with Johnson when he was hurt, and barely escaped himself. He was just ahead of Johnson in crossing. The work train was about 50 feet from him when he crossed, and moving towards him, and he says the train was 30 feet of Johnson when he went on the track, and the reason he did not get across safely was because he stood still and looked the other way, a statement denied by Johnson. The witnesses for defendant testified that there was a brakeman on the forward end of the car which struck Johnson, with a lantern. Other witnesses said it was night time, and gave different descriptions as to how well objects could be discerned. One witness testified that the brakeman was in the middle of the water car with a lantern.

Without going into further detail, the foregoing statement develops sufficiently the issues which were submitted to the jury.

*B. S. Johnson,* for appellants.

Contributory negligence was clearly proved, and not controverted, and the verdict should have been for appellant. 57 Ark. 468; 36 Ark. 46, 371; 47 Ark. 497; 49 Ark. 257; 46 Ark. 513;

50 Ark. 477; 54 Ark. 431; 56 Ark. 235; 61 Ark. 549; 62 Ark. 273, 156, 235; 56 Ark. 433; 63 Ark. 427; 64 Ark. 364; 66 Ark. 23; 69 Ark. 133, 489. The verdict was contrary to law. 57 Ark. 18; 130 Fed. 65; 27 C. C. A. 112; 90 U. S. 697.

*J. O. A. Bush,* for appellee.

Appellee was not a trespasser. 13 L. R. A. 635; 39 *Id.* 399. Appellant was liable for lack of ordinary care. 123 N. Y. 645; 104 N. Y. 362; 92 N. Y. 289; 113 Pa. 162; 45 Oh. St. 11; 112 Ind. 250; 58 Wis. 646; 99 N. C. 298; 147 Mass. 495; 60 Mo. 475. Appellee was not guilty of negligence in failing to keep a proper lookout. 70 Tex. 530; 41 U. S. Sup. Ct. Rep. 187. It is not negligence *per se* to go on a railroad track. 37 S. W. 621; 67 *Id.* 1025; 29 *Ib.* 232; 69 *Id.* 990.

HILL, C. J., (after stating the fact.) The instructions present no prejudicial errors. The court practically gave all the instructions requested by the appellant, covering every phase of its case which it desired submitted to the jury. There was abundant evidence of the negligent operation of the train to submit that question to the jury; and as it was done under proper instructions, it must be taken here that the company negligently failed to keep a lookout, and give warning of its movements.

The case then hinges upon the question whether the uncontradicted testimony develops that the plaintiff was guilty of contributory negligence requiring the case to be withdrawn from the jury.

In *St. Louis & S. F. Rd. Co.* v. *Crabtree,* 69 Ark. 134, this court pointed out that the duty of a person about to cross the railroad track was not only to look and listen, but to continue on guard and continue to use his eyes and ears until the track and danger was passed.

The court submitted this question fully to the jury, instructing them to find against Johnson unless he fully met this requirement. The instructions requested by the appellant on that subject were given, and they did not lack fullness or emphasis. It is contended that on cross-examination Johnson modified his former statements as to looking and listening, but the change is more in expression than in reality. Even if the cross-examination weakened the force of his statements, still the whole matter was a ques-

tion for the jury, and it has been resolved against the appellant on legally sufficient evidence.

The more serious question is Johnson's failure to see the train. The requirement to be constantly on guard in crossing the track is not met by looking and failing to see what is plain to be seen. If this had occurred in broad daylight, it is clear that his failure to see what could have been seen by vigilance would have defeated him. His testimony shows it was night. Other testimony puts it in that uncertain light when more the outline than the substance of objects is discernible.

The leading case on this subject is *Railroad Co.* v. *Houston,* 95 U. S. 697. Mr. Justice Field, speaking for the Supreme Court of the United States, said: "Had she used her senses, she could not have failed both to hear and to see the train which was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others."

It cannot be said here that Johnson could not have failed both to see and hear the train which was coming. It omitted lights and signals and warnings of its approach. Moving slowly, and another train nearby also moving would probably prevent the noise of its movements attracting attention. The forward car was a flat car with a water tank set back on it, and in the half light would not necessarily be seen to be moving, if seen at all. The fact, if a fact (and there was testimony to that effect) that there was a brakeman with a lantern well back on the car and about where the tank was, might tend in the dim light to deceive the eye as to whether it was a car.

These questions all went to the jury under instructions as favorable to appellant as it asked, and it cannot be said that the verdict was without evidence to support it. A decision of the Eighth Circuit Court of Appeals, *Chicago, R. I. & P. Ry. Co.* v. *Pounds,* 82 Fed. Rep. 217, is relied upon as authority requiring the withdrawal of this case from the jury. The case does not support the contention. After stating the rules similar to the announcement of them in the Crabtree and Houston cases, the court said: "The application of these principles to the case at bar demonstrates, we think, that it should have been withdrawn

from the jury, inasmuch as it was clearly shown, and not denied, that for more than 200 yards before the plaintiff reached the crossing he was in plain view of the approaching train, and could have seen it by making the slightest exertion." It cannot be said under this evidence that the approaching train was in plain view, and a question of fact was presented which was properly submitted to the jury.

The judgment is affirmed.