FORT SMITH & WESTERN RAILWAY COMPANY *v.* MESSEK.

Opinion delivered October 24, 1910.

1. INSTRUCTIONS—OBJECTION TO FORM—OBJECTION.—An objection to the form, but not the substance, of an instruction must be specifically made. (Page 248.)

2. RAILROADS—CROSSING ACCIDENT—NEGLIGENCE.—Evidence that a traveler was struck at a railroad crossing at night by an engine propelled without headlight or signal is sufficient to establish negligence on part of the railroad company. (Page 246.)

3. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.—In determining whether the question of contributory negligence should be submitted to the jury, the evidence should be considered in the light most favorable to plaintiff. (Page 246.)

4. RAILROADS—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE.—Plaintiff, before starting across defendant's track at a crossing at night, stopped his horses and looked up and down the track and listened, but saw and heard no train approaching. He was struck by an engine which approached without headlight or noise. *Held* that he was not guilty of contributory negligence as matter of law. (Page 246.)

5. RAILROADS—DUTY TO KEEP LOOKOUT.—Kirby's Digest, § 6607, requiring all persons running trains upon any railroad to keep a constant lookout for persons and property upon the track, imposes this duty upon persons running a locomotive engine in a railroad yard. (Page 248.)

6. EVIDENCE—NEGATIVE TESTIMONY.—Where a witness was so situated that he could have heard the bell of a locomotive engine if it had been rung, he may testify as to whether it was rung or not. (Page 250.)

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon,* Judge; affirmed.

*C. E. & H. P. Warner,* for appellant.

By the allegations of his complaint and his own testimony appellee has shown that the injury resulted from his own negligence. 61 Ark. 556; 65 Ark. 236; 69 Ark. 139; 49 Ark. 458; 64 Ark. 363; *Id.* 360; 61 Ark. 620; 79 Ark. 228; 80 Ark. 188; 91 Ark. 18; 94 Ark. 524; 95 Ark. 190; 127 S. W. (Ark.) 715; 65 Ark. 239; 84 Ark. 275; 125 N. Y. 407; 103 Ind. 312; 9 Fed. 867; 95 U. S. 542; 60 N. W. 57; 128 Ind. 138; 105 Mass. 77; 24 Atl. 747; 42 N. W. 24; 75 N. Y. 273; 25 Mich. 274.

*Jo Johnson,* for appellee.

HART, J. John Messek brought this action against the Fort Smith & Western Railway Company to recover damages for personal injuries sustained by himself, alleged to have been caused by reason of having been struck by one of defendant's engines on a public crossing in the city of Fort Smith. The defendant answered, denying negligence on its part and pleading contributory negligence on the part of the plaintiff. There was a jury trial, resulting in a verdict and judgment for plaintiff, from which this appeal is prosecuted.

The first assignment of error (and to our minds the most serious question in the case) presents the question of whether the evidence supports the verdict.

The plaintiff was a native of Poland, and spoke the English language imperfectly. He was a witness in his own behalf, and was examined through an interpreter. He said that he was a coal miner, and lived at Denning, Arkansas. That in September, 1909, he was in the city of Fort Smith, Arkansas, visiting a friend of his named John Boterus. That on the day he was injured he started with Boterus to deliver some goods to a customer of the latter. They went in a spring wagon owned by Boterus, and drawn by one horse. It was necessary to cross the track of the defendant company at D Street. This was a public crossing, and the defendant company had seven tracks there. They reached the crossing sometime after 7 o'clock in the evening. In the language of the plaintiff, "it

was just sun down, dusk; it was not dark, and it was not bright daylight." There were seven railroad tracks at the crossing, and the plaintiff and Boterus were going west. When in about ten feet of the first track, they stopped, and plaintiff said to Boterus: "Do you think it is all right to go across these tracks? Is there anything that can strike us?" Boterus replied, "No, everything is still, and we will cross." They saw an engine standing still above them, but everything was quiet. As they got on the last track, an engine struck their wagon. Plaintiff says that he knows that engines give signals by ringing the bell and sounding the whistle as they approach a public road crossing. He says that he listened as they crossed the tracks, but that he heard no ringing of the bell, sounding the whistle, or movement of the engine; that the first he knew of the approach of the engine it struck the wagon in which he was riding. He said that there was no headlight on the engine, and that the wagon was at about the center of the crossing on the last track when it was struck. There is no contention that the verdict was excessive. Hence it is not necessary to abstract the testimony as to the character and extent of the plaintiff's injuries.

The witnesses for the defendant say that the accident occurred "just about dusk between 7 and 8 o'clock." The engine had been on the cinder pit, where its fires were emptied. The headlight on the engine was not lighted; but there was a lamp set on the tank just back of the cab. The engine was making steam. The hostler and his assistant started to move the engine from the cinder pit to a storage track, and in so doing it was necessary to cross the public road where plaintiff was injured. The hostler walked ahead of the engine to throw a switch and was carrying a lamp. He had walked across the public crossing, and was throwing the switch when the wagon was struck. He did not see the wagon until after it was struck by the engine. His assistant was on the engine, and says he was keeping a lookout, but did not see the wagon until just as the engine struck it. Said he was on the right hand side of the engine, and the plaintiff came from the left hand side. That if he had been on the left hand side he would probably have seen them. Said that when he got upon the engine at

the cinder pit he rang the bell; that the front of the engine was about fifteen feet from the street when he started through.

There is sufficient evidence to establish negligence on the part of the defendant. According to the testimony of the plaintiff, the servants of the defendant neither rang the bell nor sounded the whistle as they approached the crossing. The statute requires these signals to be given for the purpose of warning persons of the approach of the train in order that they may not get in its way.

In determining whether the question of contributory negligence of the plaintiff should have been submitted to the jury, the evidence must be considered in its most favorable light to the plaintiff. The facts in this case are very similar to those in the case of *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Johnson,* 74 Ark. 372, where a verdict for the plaintiff was sustained.

The evidence shows that the plaintiff and his companion before starting across stopped their horse and looked up and down the tracks. They neither saw nor heard any trains approaching. They did see an engine on one of the tracks, but, on account of it not having any headlight, they might have inferred that it was stored on the track for the night. They then proceeded across the tracks, and while the plaintiff does not directly state that he continued to look, his testimony unmistakably shows that his senses were on the alert during the whole time he was on the railroad crossing. He says positively that it was dusk, that everything was quiet, and that he listened for signals or warnings of the approach of trains and heard none. The jury had a right to take into consideration all the surrounding circumstances, such as the situation of the plaintiff, his degree of attention and his alertness. The defendant's witnesses, although they were on the lookout for persons and teams as the engine approached the crossing, did not see the wagon in which the plaintiff and his companion were riding. It was dusk, that is, approaching darkness. The headlight of the engine was not lighted. It was running very slowly, and, if the plaintiff's testimony is to be believed, noiselessly. It is not surprising that under these circumstances the plaintiff did not see it approaching. When the jury gave to the testimony of plaintiff its full probative value

in the light of all the attendant circumstances, they were justified in finding that he used all his senses while on the railroad crossing, and we hold that the evidence warranted the verdict.

Among other instructions, the court gave the following at the instance of the plaintiff:

"1.   If you find from a preponderance of the testimony, that plaintiffs, Messek and Boterus, were driving along a public thoroughfare or street in the city of Fort Smith, which street was crossed by defendant company's railroad track, and that, on approaching said track, plaintiffs stopped, looked and listened, and saw no moving train or engine, and heard no bell ringing or whistle sounding, and saw or heard nothing else to put them on notice of danger, then it was not negligence for them to proceed to cross said track, unless you find that the engine was partly across the street, and that plaintiff failed to make proper investigation or inquiry as to whether it was proceeding to cross at the time."

At the request of the defendant, the court also gave the following instruction:

"2.   You are instructed that plaintiff, in approaching the point where the road on which he was traveling was crossed by a number of railroad tracks of the defendant, some of which entered the round house and repair shop, the plaintiff, before crossing any of said tracks, was required to look and listen for approaching trains, cars and engines; and if you find that by looking and listening the injuries alleged to have been sustained by him could have been avoided, then you will find for the defendant."

The following instruction asked by the defendant was refused by the court:

"4.   You are instructed that the plaintiff was required to look and listen for approaching trains upon every track he crossed, and when, by the exercise of care in this respect, the danger could have been avoided, a failure to look and listen will constitute such negligence that, if he was injured, no recovery can be had against the defendant."

Counsel for the defendant urged that the court erred in giving instruction No. 1, because it assumed that there was only one track at the crossing. The instruction is not susceptible

of that construction when considered in connection with instruction No. 2.

Again counsel for defendant insists that the court erred in refusing instruction No. 4. We do not agree with them. While the plaintiff owed the continuing duty of looking and listening as he crossed each track, his duty in that regard was explained in instruction No. 2. This instruction told the jury that the plaintiff, "before crossing any of the tracks, was required to look and listen for approaching trains." When considered in connection with each other, it is manifest that both court and the jury understood from reading instructions Nos. 1 and 2, that the plaintiff must look and listen while crossing each track of the railroad. If the defendant thought otherwise, it was its duty to make a specific objection, and thus point out the different shades of meaning of which the instructions were susceptible. This was not done, and it is the settled rule of the court that an objection to the form, and not to the substance, of an instruction must be specifically made.

Again, it is objected by counsel for the defendant that the instruction on the measure of damages was not correct, and that the judgment should be reversed because it was given. The instruction complained of is not in very good form, but it contains all the elements of damages that are recoverable in cases of this sort, in accordance with the rule announced in the following cases: *Railway Company* v. *Sweet,* 60 Ark. 550; *Arkansas Southwestern Ry. Co.* v. *Wingfield,* 94 Ark. 75; *St. Louis, I. M. & S. Ry. Co.* v. *Hartung,* 95 Ark. 220.

An examination of the record discloses no reversible errors, and the judgment will be affirmed.

### ON REHEARING.

#### Opinion delivered November 14, 1910.

HART, J. In their motion for a rehearing counsel for appellant complain that we did not discuss two of their assignments of errors, one in regard to the court giving over their objection instruction No. 2, and the other in refusing instruction No. 5 asked by them.

The one given is as follows:

"2. If you find from a preponderance of the testimony that the defendant company, through any of its servants or

employees, ran an engine along said track in the night time without keeping a lookout for persons and property on the track, or without ringing a bell or sounding a whistle, or without a headlight on the engine, at the time and place when and where plaintiffs were about to cross said track, this would be negligence, and you will so find."

The one refused is as follows:

"5. You are instructed that if you find from the evidence that the engine which collided with the plaintiff herein was being brought from the cinder pit for the purpose of placing same upon a side track, and was not in regular use by defendant, but was being prepared for use, then it is immaterial whether or not the engine was equipped with a headlight. And you are further instructed that if the plaintiff saw the engine before the accident occurred, then it is immaterial whether or not the engine was equipped with a headlight."

It is true, we did not specifically discuss the action of the court in giving or refusing the instructions in question; but we duly considered them, and thought the principles decided in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Johnson*, 74 Ark. 372, cited in our original opinion, would indicate that we had considered them. To be more specific, it was decided in the case of *Little Rock & Fort Smith Ry. Co.* v. *Blewitt*, 65 Ark. 235, that "an engine and tender are a train, within the meaning of the statute making railroads responsible for all damages to persons and property done or caused by the running of trains in this State."

"Kirby's Digest, sec. 6607, providing that it is the duty of all persons running trains upon any railroad to keep a constant lookout for persons and property upon the tracks, etc., requires a lookout to be kept by persons running cars and engines in a railroad yard." *Little Rock & Hot Springs Western Railroad Company* v. *McQueeney*, 78 Ark. 22.

In the Johnson case the evidence for the plaintiff tended to show that the train which injured him was a work train, consisting of an engine, tender and two water cars, which was being slowly backed over the crossing at night without lights or signals. The court said: "There was abundant evidence of the negligent operation of the train to submit that

question to the jury; and, as it was done under proper instructions, it must be taken here that the company negligently failed to keep a lookout and give warning of its movements." In such cases the question is whether the train is being negligently operated, and in determining that question the purpose for which the train is being operated does not enter.

Again, it is contended by counsel for appellant that the evidence of apellee tending to show that the train approached the crossing without giving warning by ringing the bell or sounding the whistle was negative. We do not agree with their contention. All the facts and circumstances attending the occurrence as testified to by appellee tend to show that he was using his senses continually while on the crossing. He knew that it was the duty of the servants operating the train to give notice of its approach to a public crossing by ringing the bell or sounding the whistle. During the whole time he was on the crossing he was noticing for these signals. The conditions and circumstances surrounding him were such that he could have heard the signals, had they been given. Everything around there was quiet. His mental condition was such that he could have heard the bell, had it been rung. In such case he must be said to have such knowledge as enabled him to speak affirmatively of the existence of the fact in regard to which he testified. See Wigmore on Evidence, § 664. As stated by Prof. Wigmore, "the only requirement is that the witness should have been so situated that, in the ordinary course of events, he would have heard or seen the fact had it occurred;" and under such a condition the testimony is not "based on what may be called negative knowledge."

As stated in our former opinion, while the evidence on the part of appellee was weak, we think it was sufficient to warrant the verdict of the jury. The motion for rehearing will be denied.