## Louisiana & Arkansas Railway Company *v.* Woodson.

### Opinion delivered January 29, 1917.

1. EVIDENCE—PERSONAL INJURIES—STATEMENT OF PLAINTIFF REDUCED TO WRITING BY ANOTHER.—Plaintiff sustained personal injuries when struck by a moving railway train; an employee of defendant company reduced to writing an oral statement by plaintiff, which, however, the latter did not sign; *held*, the writing was inadmissible.

2. EVIDENCE—SUBMISSION OF PLAINTIFF TO X-RAY EXAMINATION.—In a personal injury action where plaintiff sustained injuries and physicians who examined and attended him, testified that the injury was to his nerves, that an operation would be useless, and that the injured nerves could not be seen by the use of the x-ray; *held*, it was not error for the trial court to refuse to require plaintiff to submit to an x-ray examination.

3. EVIDENCE—PERSONAL INJURIES—PLACE OF INJURY—VIEW BY JURY.—In an action for damages for personal injuries, where plaintiff was struck by a moving train, it is no abuse of its discretion for the trial court to refuse to order the jury to visit the scene of the accident, when the same is in another county, and where a very exact plat of the ground in question had been introduced in evidence.

4. RAILROADS—INJURY TO PERSON AT PUBLIC CROSSING—BURDEN OF PROOF.—Where plaintiff was struck and injured by a train at a public

crossing, a *prima facie* case of negligence against the railroad company exists, and the burden is upon the company to prove its own due care on the contributory negligence of the plaintiff.

5. APPEAL AND ERROR—OBJECTIONS TO INSTRUCTIONS.—Objections to instructions must be made, and exceptions saved, at the time the instructions are given.

6. RAILROADS—PERSONAL INJURY—APPLICATION OF LOOKOUT STATUTE. —Where plaintiff was struck by a moving train at a public crossing, on a dark night, and the keeping of a lookout on the train might have prevented the injury, it is not error for the trial court, in instructing the jury, to frame an instruction in the terms of the lookout statute. (Public Acts 1911, No. 284, p. 275.)

7. APPEAL AND ERROR—INSTRUCTION—IMPROPER REFERENCE TO PLAINTIFF.—In a personal injury action, where plaintiff was present at the trial in person, the inadvertent reference to him as the *deceased* by the court in one of its instructions, will not be held prejudicial error.

8. NEGLIGENCE—PERSONAL INJURY ACTION—DEFINITION OF NEGLIGENCE IN INSTRUCTION.—In an action growing out of personal injuries, where negligence is the foundation of the suit, in order that the jury may make a proper application of the law to the facts, a definition of negligence may be given to the jury, without being subject to the criticism that it is abstract.

9. APPEAL AND ERROR—OBJECTION TO VERBIAGE IN AN INSTRUCTION.— Appellant is required specifically to call the attention of the trial court to doubtful language, expressions or sentences contained in instructions.

10. DAMAGES—MENTAL AND PHYSICAL SUFFERING.—The rule for measuring damages is elastic, and is dependent to a large extent upon the facts and circumstances of each case. Unless the amount of a verdict is so large that it necessarily shocks the sensibilities of a court, the verdict will not be set aside or modified.

Appeal from Lafayette Circuit Court; *Geo. R. Haynie*, Judge; affirmed.

*Henry Moore* and *Henry Moore, Jr.*, for appellant.

1. The verdict is excessive. 50 Tex. 254; 5 Am. Negl. Cases, 755; 58 L. R. A. (N. S.) 1915, F. p. 30; 153 S. W. 32; 78 Ark. 22; 89 *Id.* 87; 89 *Id.* 122; *Ib.* 522; 101 *Id.* 376; 103 *Id.* 376; *Ib.* 374; 104 *Id.* 529; 105 *Id.* 269; *Ib.* 392; *Ib.* 533; 106 *Id.* 138, 177, 353; 109 *Id.* 231; 107 *Id.* 512; 119 *Id.* 246; 121 *Id.* 351; 94 *Id.* 270, and others.

2. The statement of plaintiff made before witnesses, should have gone to the jury. The jury should have been allowed to view the place of the injury.

3. Plaintiff's instructions given from Nos. 1 to 10 were error. No. 1 was abstract. 110 Ark. 519-21; 107 *Id.* 431. No. 2 was held error in 110 Ark. 161. The duty to look and listen is an absolute one. No. 4 is abstract and misleading, as is No. 5, under the "Lookout statute." 113 Ark. 353-358. The giving of abstract instructions is condemned in 14 Ark. 529; 23 *Id.* 289; 36 *Id.* 642; 37 *Id.* 593; 41 *Id.* 382; 42 *Id.* 57. No. 7 assumes facts and tells the jury what to do— thus weighing and passing upon the evidence.

4. A verdict should have been directed for defendant on account of the contributory negligence of the plaintiff. 54 Ark. 431; 61 *Id.* 549; 79 *Id.* 608; 65 *Id.* 235; 62 *Id.* 156; 97 *Id.* 438; 100 Ark. 533; 101 *Id.* 315; 102 *Id.* 160. Failure to look and listen will necessarily constitute negligence. *Supra.*

*Searcy & Parks* and *Steve Carrigan, Jr.,* for appellee.

1. Under our statute, where an injury occurs by a running train, the presumption is that the railroad company was negligent, and the law casts upon it the burden of showing ordinary care, and as a corollary, presumes that the injured was in the exercise of due care. 57 C. C. A. 387; 78 Mo. 195; 163 U. S. 366; 103 Ark. 377; 80 Ark. 19; 105 *Id.* 187; 115 *Id.* 534; 99 *Id.* 228. Proof of injury at road or street crossings is *prima facie* evidence of negligence on part of the railroad. 65 Ark. 237; 63 *Id.* 638; 110 *Id.* 519. There was no error in instruction No. 1 for appellee.

2. Instruction No. 2, for appellee, is the law. No objection was made to it at the time. 81 Ark. 195; *Ib.* 488; 101 *Id.* 387.

3. No. 4 is an exact copy of the lookout statute, from Acts 1911, 275. 116 Ark. 518. No specific objection was made to No. 5. The court's attention was not called to the use of the word "deceased's." 101 Ark. 387; 113 *Id.* 353; 123 Ark. 458. It correctly states the law.

4. No. 6 is a legal declaration of negligence and No. 7 was not specifically objected to. 39 Ark. 40. No. 8 is a *veteran* of the law, almost a maxim.

5. There is no error in the refusal of appellant's requests for instructions "A" and "1." The law is well settled as to contributory negligence at crossings. 74 Ark. 373; 93 *Id.* 246; 96 *Id.* 643; 99 *Id.* 167; 90 Am. Dec. 767. The law must be complied with. No lights were visible, no bell ringing and no whistle was sounded. Cases *supra*; 163 U. S. 366; 11 L. R. A. 364; 54 Ark. 54; 431-5; 110 Ark. 168; 62 *Id.* 164; *Ib.* 238; 123 Ark. 458. The law as to contributory negligence is correctly stated.

6. The refusal to require an x-ray examination was not error. 46 Ark. 284; 60 *Id.* 485. The unsigned statement was not admissible.

7. The verdict is not excessive under the evidence. It is not shocking to one's sense of justice. Larger ones have been approved by the courts. 156 S. W. 166; 107 Ark. 512; 113 Ark. 265; 105 *Id.* 533; 137 S. W. 1103; 99 Ark. 265; Ann. Cas. 1913, B-141, 69 S. W. 653.

Humphreys, J. The appellee, J. E. Woodson, sued appellant, Louisiana & Arkansas Railroad Company, in the Lafayette Circuit Court for damages on account of personal injury, and obtained a judgment for $12,500. The injury occurred on Fifth Avenue in Hope, Arkansas, at the intersection of said avenue with appellant's railroad, between 9 and 10 o'clock on the night of August 30, 1915. The railroad track at that point runs practically north and south and the avenue east and west. There was a concrete walk on the south side of Fifth avenue leading to the railroad and extending to within twelve feet of the railroad tracks. The sidewalk extends across the railroad tracks but is made of cinders instead of concrete. The main line of appellant's railroad track is laid in the street that intersects Fifth Avenue on the east side thereof, and there are three other tracks parallel thereto in the same street belonging to the Frisco Railroad Company.

The street itself in which these tracks are laid is forty-two feet wide. An incandescent light on a pole eighteen feet high is in Fifth Avenue on the west side of the tracks. On each side of the tracks there are railroad crossing signs and the injury to the plaintiff occurred while attempting to cross the railroad tracks at this public crossing. He was walking at the time of the injury in a westerly direction. On the east side of the tracks and on the south side of Fifth Avenue, there was a row of cottonwood trees from five to seven in number some fifteen feet apart in full foliage with limbs hanging over toward the main line of appellant. There was also a house on the south side of Fifth Avenue near the track. The light on the west side of the tracks gave sufficient light to see across the tracks. The injury occurred on a dark night. The train that is supposed to have caused the injury was a freight train composed of some thirty cars which had been switching in the yards south of the point where the injury occurred, some considerable distance. There was an oil tank car on the north end of this train. The train, or a portion thereof, backed across Fifth Avenue in order to connect with the caboose which was standing some four hundred feet north of the street crossing. After backing across the street and making this connection it pulled out south. No one saw the injury. The appellee testified that as he approached the railroad crossing, he looked and listened and could see no light either north or south and heard no signals; that no lights were visible on the rear end of said train when it hit him; that he heard some switching down about the yards, but heard nothing near the crossing; that about the time he stepped on the track he was struck, knocked down and injured by the train backing north. When found, he was lying some sixteen feet from the track south of the point of the concrete walk in the edge of the yard of the house just north of Fifth Avenue. His hat was several feet further south. According to the theory of appellant, he was struck, if at all, by the train as it pulled out going south.

There was evidence tending to show that appellee might have been injured by the train as it moved either north or south; that if it struck him when moving north, either that a lookout was or was not being kept; or that a light was or was not on the back end of the north end car.

Appellee made a statement the next day after the injury to the effect that he did not know what hit him; this statement was reduced to writing by an employee of appellant, but appellee did not sign same. Appellant asked permission to introduce the written statement. The court excluded the statement and the appellant saved its exceptions to the ruling of the court.

The injury received by appellee was to the motor nerve causing the loss of the use of his right leg. He is compelled to walk on crutches and drag his right leg. The sensory nerves are still normal, but the motor nerve is either split or under pressure. Before the injury, appellee was a strong man; after the injury, a weak, nervous man. At the time of the injury, he was fifty-seven years of age, his expectancy sixteen and one-half years, and his earning capacity eighty dollars per month.

Appellant requested that appellee submit to an x-ray examination to determine whether the injury was permanent. Two physicians testified as to the nature and extent of the injury. Dr. Kelley treated appellee in his private sanitarium for thirty days after the injury. A portion of his testimony is as follows:

"Q. From the objective symptoms as presented by this case, do you think, in your opinion as a physician that Mr. Woodson is permanently injured?

A. He looks like he is. You can't tell what a nerve will do. Sometimes you can operate on a nerve. If it is a pressure on the nerve, by operating and removing the pressure on the nerve the function is restored, but in divided nerves of this character, of such an injured nerve, an operation would be a failure.

Q. Then, Doctor, in your opinion, an operation would not be of benefit to Mr. Woodson?

A.   Well, I will tell you my advice to him about it. Doctor Dale suggested he might be relieved by an operation.   I told him if he was my brother, I would not advise it.   I don't know what an operation will be.   He is living now.   If you go to cutting around the spinal cord, you don't know what the result will be.   I would not advise it."

Doctor Ellis Weaver, in answer to questions, said:

"Q.   In your opinion, Doctor, from the objective symptoms you have seen in this man, is his condittion permanent?

A.   Yes, sir; I think so.

Q.   Would the most delicate x-ray machine that is in use show whether or not a bone, if it was pressing on the nerve, had divided the nerve or cut it in two, or whether it was just pressing on it?

A.   You wouldn't see the nerve at all.

Q.   Then if in Mr. Woodson's case the blow from the train had injured the spinal column, or rather the back bone, or broken a piece of the bone, could you tell from the x-ray whether that nerve was cut in two by that bone, or whether it was just pressing on it?.

A.   You couldn't tell."

The circuit court declined to order an x-ray examination.   Appellant moved the court to permit the jury to view the place where the injury occurred.   The court declined to do so.

Appellant set up eighteen grounds in its motion for a new trial which was overruled, and this cause is here on appeal.

(1)   Appellant insists that the trial court erred in refusing to admit the unsigned written statement of appellee written by its employee.   The court offered to permit witnesses to use the statement as a memorandum to refresh their memories.   We think this carried the doctrine far enough.   These witnesses testified to the substance contained in the writing without referring to the paper.   It certainly would be a novel precedent to allow interested parties to take an oral statement in writing from an injured party and use it against him in

the trial of a cause as his solemn written admission. No authorities are cited in support of this character of evidence in personal injury suits and we have none in mind.

(2)   The refusal of the circuit judge to force the appellee to submit to an x-ray examination is urged as reversible error.   The testimony of the physicians in this case does not disclose the fact that an x-ray examination would determine the extent of the injury.   Doctor Kelley was of the opinion that no relief could come except from a very delicate and dangerous operation; one that he would not advise a brother to submit to. Doctor Ellis Weaver said the nerve could not be seen by the use of an x-ray.   Both believed the injury permanent.   Under this state of case, the circuit judge did not abuse his discretion in overruling the motion for an x-ray examination.   This court will not interfere with matters within the discretion of the lower court unless there is a clear abuse of the power.   *Railway Company v. Dobbins*, 60 Ark. 485.

(3)   Our attention is called to the refusal of the circuit judge to permit the jury to visit the scene of the injury.   A very exact plat of the ground was introduced in evidence.   It is easily understood.   There is nothing peculiar about the topography of the land or the construction of the tracks.   The case was being tried in another county, and the absence of the jury might have interfered with the orderly and rapid dispatch of the court's business.   To permit a view of the locality where the injury occurred is a matter clearly within the sound discretion of the presiding judge and nothing appears in this record disclosing abuse of the power:

Instruction No. 1, given by the court, is as follows:

"You are instructed that whenever a person is struck or injured by the operation of a railroad train at a public crossing, the presumption is that the striking or injuring of such person was caused by the negligence of the railroad company's servants and employees in charge of the train at the time, and the burden is upon the railroad company to show that its servants and

employees were not guilty of any negligence causing the striking and injury."

(4) Appellant insists that this instruction, in almost the identical language, was condemned by the court in the cases of *St. L., I. M. & S. Ry. Co.* v. *Gibson,* 107 Ark. 431, and *St. L., I. M. & S. Ry. Co.* v. *Zerr,* 110 Ark. 519-521. Those cases were dealing with trespassers. The instant case is dealing with a licensee; a person crossing a railroad track at a public street crossing. There is some conflict in the evidence as to whether the appellee was injured while the train was backing north or when it was pulling out south, but it is clear from this record that appellee was injured by appellant's train. This being true, our court is committed to the doctrine that it makes a *prima facie* case of negligence against the railroad. If the injury is established, the *prima facie* case made thereby, can be overcome in no other way than by proof of contributory negligence on the part of the injured party or that defendant was not guilty of negligence; and the burden is upon the railroad to establish such contributory negligence. *St. Louis, I. M. & S. Ry. Co.* v. *Morgan,* 115 Ark. 534.

Instruction No. 1, as given, so informed the injury and is correct as applied to parties on a railroad track with right. It is urged that the use of the word, *whenever,* used in this instruction is tantamount to saying to the jury that appellee was struck by appellant's train. In the connection used, it carries the same meaning as the word "if."

(5) Our attention is called to the fact that instruction No. 2, given in the case at bar, is in the same language of an instruction given in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Roddy,* 110 Ark. 161; that in the case referred to, this court held such an instruction erroneous. It is useless to enter upon a discussion of the instruction as applied to the facts in this case for the reason that it is recited in the transcript that 'The court gave said instruction No. 2, asked by the plaintiff, without objection being made on the part of defendant." It has often been held by this court that

objections and exceptions to instructions must be made at the time the instruction is given. In the case of *Plumlee* v. *St. Louis S. W. Ry. Co.*, 85 Ark., at page 495, the Justice, in expressing the opinion of the court, said: "No objections were saved to instructions of the court, and therefore, by a familiar rule of practice, error, if any occurred, was waived." This well established rule of practice, precludes the appellant, in the instant case, from urging error by the lower court in giving instruction No. 2.

(6) Instruction No. 4, given by the court, is a copy of the lookout statute. Public Acts of 1911, p. 275. Appellant contends that there is no evidence in this case upon which to base this instruction. The undisputed evidence in this case is to the effect that this long freight train was backed across Fifth Avenue, a public thoroughfare, on a dark night. The evidence is conflicting as to whether a lookout was being kept on the north end car and as to whether signals were being given, such as blowing the whistle and ringing the bell. The evidence is also conflicting as to whether this train was moving slowly or rapidly. Had a lookout been kept by some one with a light on the end of the car, this accident might have been prevented. In relation to the facts in this case, this statute can bear only one construction. Unless the meaning of the statute as applied to the facts in the case is susceptible of more than one construction it is not error to read such a statute to the jury. *St. Louis, I. M. & S. Ry. Co.* v. *Elrod*, 116 Ark. 514.

(7) Instruction No. 5, referred to appellee as *deceased*. Appellants contend this was prejudicial error. The court's attention was not called specifically to this word at the time the instruction was given, and it is too late now to interpose such an objection. It is quite apparent that no prejudice resulted from this inadvertent reference as appellee was present at the trial. Further objection was made to the instruction because it is contended that there was no evidence to show that appellant could have used any care to pre-

vent the injury after discovery of appellee, had it kept a lookout. The instruction is as follows:

"(8) You are instructed that if defendant's servants discovered *deceased's* peril in time to have avoided injuring him by the exercise of ordinary care, or if by keeping a constant lookout they could have discovered his perilous position in time, by the use of ordinary care, to have avoided injuring him, then you will find for the plaintiff."

Appellee said that as he approached the track, he kept listening and looking. Had the brakeman been on the rear end of the car with his lantern, appellee could have detected the approaching train, and the brakeman, by signaling with his lantern, might have prevented the injury. This court in a recent case spoke in certain terms as to the purpose for which the lookout statute was enacted. "Indeed, it was enacted for the purpose of making railroad companies liable where, notwithstanding the contributory negligence of the person injured, the injury could have been averted had a lookout been kept, and it is immaterial whether the operators of the train know of the person's presence and danger or not, provided the circumstances are shown to be such that the injury could have been avoided by the exercise of ordinary care had a lookout been kept." The circumstances in the case at bar are sufficient to support a finding of the jury that had the brakeman been on the end of the car with his lantern, signaling as the train approached the street, the injury could have been averted. Ordinary care would exact of the brakeman that he signal with his lantern from the end of the car as the train approached the street crossing.

Instruction No. 6, given by the court, is a legal declaration of negligence. In a case where negligence is the foundation of the suit, in order that the jury may make the proper application of the law to the fact, a definition of negligence would be of material assistance to the jury, and therefore, in a case of this character, is not abstract and misleading.

(9)   Instruction No. 7, given by the court, refers to contributory negligence, and appellant argues that it is an erroneous instruction because certain language in the instruction assumes that appellee was struck by appellant's train.   The record recites that "Instruction 7 was given over the general objection of defendant."   If the language in the instruction is susceptible of the construction now placed upon it by appellant, it should have called the special attention of the trial judge at that time to the objectionable language. Every record will contain errors of this character unless such a rule of practice is enforced.   The trial court has no time to safeguard every expression and nicely weigh the effect and bearing of every sentence, one upon the other; so it is a sound rule to require litigants to specifically call the attention of trial courts to doubtful language, expressions or sentences contained in instructions.

It is argued that the court erred in instructing the jury as to the manner of weighing the testimony in the case.   In the latter part of instruction No. 8, the court used the following language: "You should not arbitrarily disregard the testimony of any witness but weigh the same, and then you may believe one witness, though he is opposed by all the other witnesses, if you believe his testimony *comports more nearly with the truth than others who have testified.*"   The language specially objected to is in italics.   Appellant says this is a direction to the jury that it may believe the testimony of a witness when the testimony only approaches toward the truth.   This language in the instruction was immediately followed by the following language: "So after all, you are the sole and illimitable judges of the testimony and the credib lity of the witnesses," and immediately before the sentence in which the objectionable language is used, the following language is used: "You may believe them in whole or in part, or you may disbelieve him in whole or 'n part."   We think in view of the connection in which the language was used, the jury must necessarily have understood that

they might believe only such testimony as they found to be true. Certainly it was not an instruction to believe untruthful testimony or to believe testimony that approached the truth only. No authorities are cited with reference to this instruction by either appellant or appellee, and after having carefully considered the instruction as a whole, we are quite sure the jury understood that they were to consider only the testimony in the record they found to be true.

Appellant contends that a peremptory instruction should have been given in its favor on the whole evidence in the case, and that it was entitled to instructions "A" and "1," asking that a verdict be rendered in its favor because of contributory negligence on the part of the plaintiff. In support of this position, many authorities are cited to the effect that one is guilty of contributory negligence who attempts to cross railroad tracks at a regular crossing without stopping or listening for approaching trains and without continuing to look and listen until the danger is passed; and authorities to the effect that when the undisputed evidence establishes the fact that the injured party passed over the tracks without listening and looking, it would be error to submit the question to the jury; that it would then become a question of law for the court, and not a question of fact for the jury. Most of the cases cited by appellant were cases where the injured party had approached the crossings in the daytime, and where there were no obstructions, and where the injured party could have heard if he had listened, and could have seen the approaching train if he had looked.

The undisputed evidence in this case neither establishes the fact that appellee failed to look and listen; or that he could have seen or heard the approaching train if he had looked and listened, and continued to do so until the danger was passed.

The evidence is conflicting on these points. It was a dark night. There was a row of trees along the track in full foliage, the limbs hanging over toward the track. The back end of a long train was being pushed across the

street. The engine was a long distance from the rear
end of the train. Appellee was facing an electric light
which might more or less have blinded him. This light
only enabled him to see straight across the tracks, and
not up or down them. If it be true that this train was
backing slowly across the street with the engine on the
far end, it might have made little or no noise. If it be
true that the brakeman was not on the back end of the
back car signaling with his lantern, it may have been
impossible for appellee to have seen the approaching
train if he had been looking or to have heard said train
if he had been listening. Appellee swears that he was
listening and looking and that if there had been a light
on the rear end of the train, he could have seen it. In
case an instruction on contributory negligence has any
place in this case under the evidence, it was a question
for the jury to say whether appellee was looking or
listening or whether if he had been looking and listen-
ing he could have seen or heard the approaching train
under the existing situation. The following cases sup-
port these declarations of law if an instruction on con-
tributory negligence has a place in the case: *St. L.,
I. M. & Southern Ry. Co. v. Johnson*, 74 Ark. 372; *Ft.
Smith & Western Ry. Co. v. Messek*, 96 Ark. 243; *Ark.
& La. Ry. Co. v. Graves*, 96 Ark. 638; *Ark. Central Ry.
Co. v. Williams*, 99 Ark. 167.

If any error was committed in this case, it was by
giving an instruction on contributory negligence, if
the lookout statute was applicable, and the failure to
comply with its terms was the cause of the injury.

(10) The only remaining question is whether the
verdict is excessive. Appellant contends that it appears
to have been rendered under the influence of passion
or prejudice. Nothing appears in the record indicating
that the verdict of the jury was induced by either pas-
sion or prejudice. Appellant cites a long list of authori-
ties where verdicts for less than this amount were ren-
dered in cases where the suffering and injury was per-
haps greater than in this case. It is suggested that a
fair average of the verdicts rendered in all such cases

might be a proper test as to whether a verdict in a given case is excessive.

We know of no exact legal measure in damages for mental and physical suffering. The rule for measuring damages is elastic and is dependent to a large extent upon the facts and circumstances in each case. Unless the amount of the verdict is so large that it necessarily shocks the sensibilities of a court, the verdict will not be set aside or modified.

The injury in this case not only affected a portion of appellee's body, but it has affected his nervous system. The injury is perhaps permanent, and appellee will likely spend the balance of his days on crutches, dragging his right leg. On account of his nervous condition, as well as the condition of his body, he must necessarily suffer to some extent during his entire life. His earning capacity is destroyed; his expectancy is sixteen and a half years, and at the time of the injury, he was earning from $75 to $80 a month.

The amount may be in excess of some verdicts in like cases, but under all the circumstances in this case we can not say that it is excessive. The judgment will be affirmed.