**LOUISIANA RY. & NAV. CO. OF TEXAS v. LOUDERMILK. (No. 3587.)** *

Court of Civil Appeals of Texas. Texarkana. Dec. 19, 1928.

Rehearing Denied Jan. 3, 1929.

See, also, 295 S. W. 193.

Touchstone, Wight, Gormley & Price, of Dallas, Jones & Jones, of Mineola, and B. M. McMahan, of Greenville, for appellant.

Clark, Harrell & Starnes, of Greenville, for appellee.

LEVY, J. (after stating the facts as above). The several propositions of the appellant present the points in view, in effect, that the evidence goes conclusively to show (1) no actionable negligence on the part of the company or the operatives of the train in failure to reasonably safeguard the protection of the occupants of the automobile, and (2) the appellee's injuries were proximately caused by a lack of reasonable and proper efforts to foresee and avoid the collision. It is believed the state of the evidence was such as to justify the trial court in refusal of the peremptory instruction to the jury to return a verdict in favor of appellant, and in refusal to set aside the findings of the jury as against the preponderance of the evidence. According to all the evidence in behalf of the appellant, considered of itself and standing alone, the train approached the crossing at a slow rate of speed, with all reasonable and adequate warning of the fact of its approach to afford timely protection of travelers who themselves are in the exercise of reasonable care and vigilance. The train was going at between 4 and 5 miles an hour; two men with lighted lanterns were stationed on top of the foremost car as a lookout; the city's street electric light was brightly burning, showing the crossing; the electric automatic signal bell at the crossing was sounding a warning of the train's approach, and audible signals of blowing the whistle and ringing the bell of the engine were also being given; the plaintiff's view of approaching trains from the west was unobstructed.

On the other hand, according to all the evidence in behalf of the appellee, considered of itself and standing alone, the cars were being backed toward and over the crossing at the time at a fast rate of speed, and, under the circumstances, without reasonable and adequate warning of their approach such as may reasonably be expected to safeguard the protection of travelers who themselves are in the exercise of ordinary care and vigilance. The train was being backed at a rate of speed of about 20 miles an hour, without any person standing in a visible position on the foremost car to watch, and without any light on the foremost car; the crossing was clothed in darkness, the night being dark, and the city's street light at the crossing being extinguished for the night; no audible signals were given of the ap-

proach of the cars, such as blowing the whistle or ringing the bell of the engine; the usual automatic electric signal bell at the crossing was not sounded; and the cars were moving noiselessly on to the crossing. There being evidence to sustain the two different and conflicting views, the question became peculiarly one for the jury, under proper instructions from the court, to determine negligence vel non of the appellant. Under the long-existing rule, in order to authorize the directing of a verdict, the state of the evidence as a whole must be such as to authorize but one conclusion to be drawn therefrom by reasonable men. Galveston, H. & S. A. R. Co. v. Thompson (Tex. Civ. App.) 116 S. W. 106, and numerous other cases.

■ The rights of the public using a public street in the city, and of a railway company crossing it, are reciprocal; and, although common convenience may give the railway freight train precedence upon the crossing, it is upon condition that reasonable warning of its approach is given so that a person or a vehicle upon the street may, in the use of reasonable efforts, avoid danger of collision, or stop and wait for the train to pass. As to the nature and kind of warning the railway company is bound to give, the law does not undertake to lay down a rule applicable to all cases, the same depending upon the character of the crossing and all the surrounding circumstances which determine the danger to be anticipated and provided against. But, although the railway company was also guilty of negligence, the leading rule is that there can be no recovery of damages where the negligence of the traveler contributed proximately to the injury. The right of recovery is determined by the contributory negligence of the traveler. In considering this question, the two different and conflicting views presented by the evidence are to be noted, and, in addition thereto, the further proof of the parties. The appellant further showed that the automobile was operated at a fast rate of speed towards the crossing, and did not slow up, but, without heeding the train, ran into the side or in the way of the foremost car, then nearly over the crossing; that the appellee and the other occupants of the automobile at the time were behaving in a noisy way, and were not looking in any direction for an approaching train; that the lookout on top of the foremost car holloed loudly, and waved his lantern at the occupants of the automobile when it was "thirty or thirty-five feet" from the crossing; and that none of the occupants of the car heeded such warning.

On the other hand, the evidence in behalf of the appellee showed that none of the things claimed by appellant happened, and that he and the driver of the automobile used every reasonable and proper effort to foresee and avoid the collision under the circumstances; that the driver of the automobile slowed the car to between 4 and 5 miles an hour in approaching the crossing; that the occupants of the automobile continuously looked in both directions for a train and listened to hear if one were approaching, and did not see or hear the train, or otherwise know of its approach, until it reached a point within about 5 feet of the automobile. There is corroborative evidence that the electric signal bell at the crossing "sometimes did not ring when there was a train coming. Of course they get out of order sometimes." If the facts so appearing in the evidence in behalf of the appellee be true, as the verdict of the jury declares, there is ample room for the conclusion that the catastrophe was not the consequence of the failure of the appellee to use reasonable care to foresee an approaching train and in undertaking to use the crossing at the time under the particular circumstances. The circumstances are amply sufficient, as within the province of the jury to say, to lure an ordinarily prudent person into a feeling of safety, tempting him, as it did the occupants of the automobile, to pass on over the crossing in the belief that no train was in fact approaching at the time. The mere fact that appellee and the other occupants of the automobile failed to stop before going on the crossing, knowing the crossing was there and just ahead, would not conclusively operate to preclude a recovery, in view of the specially cogent circumstances of the absence of lights and audible signals and the failure of the electric signal bell to sound the usual warning. The facts are not comparable to those in the case of Baltimore & O. R. Co. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645, cited and seemingly relied upon by appellant.

■ The appellant predicates error upon the charge of the court in submitting as grounds of negligence, in effect, the failure to display some character of light on the end of the foremost car, and the failure to have air brakes connected through the train. The court charged the jury:

"Or if you believe from the evidence that under the circumstances and conditions existing on the occasion in controversy the employees of defendant operating the train were guilty of negligence in not having some character of headlight on the front end of the freight-cars as the same were being moved through the town of Greenville," etc., "or if you believe from the evidence in this case that the failure of the employees operating the train to have the air connected through said train upon the occasion was negligence," etc.

The objections to the charge were upon the grounds: "There is no evidence to show that the failure" to place a headlight on the front box car, or to couple the air brakes,

"could or would constitute actionable negligence under the facts of the particular case," and "because the instruction is more onerous than is provided by law, and requires a greater duty than is required by the law of this state." The statute, article 6372, only requires an engine to be equipped with a headlight of a described pattern when not used "in the switching of cars or trains." The charge did not require a headlight of that described pattern. As used "headlight" was in the meaning of "some character" of light displayed in front of the foremost car. Neither was the charge predicating liability upon the violation of any statutory provision in authorizing a finding of negligence upon failure to display "some character of headlight on the front end of the freight cars." The court was submitting the question to be determined on general legal principles of whether, under all the circumstances, reasonable care required the display of some character of light in front of the foremost car such as would have enabled those in the street about to use the crossing to see the approaching train, and by reasonable efforts avoid collision and injury. It can properly be assumed, under the particular circumstances, that with the aid of a headlight of some character on the front of the foremost car the occupants of the automobile could, by a proper lookout, well and timely have seen the approaching train in time to give it precedence of passing over the crossing. The jury were amply authorized to find the element of proximate cause of the injury in the failure, if any there was, to have a light displayed from such place on the car. In the view of the evidence in behalf of the appellee, the train of cars was being noiselessly backed over an unlighted street crossing on a dark night, and without the display of any light on the end of the car so as to make the approaching car visible at the time to those on the street. It is believed the point as made should be overruled. 2 Thompson on Neg. §§ 1548, 1954; 3 Elliott on Railroads, § 1159; Lloyd v. Ry. Co., 118 N. C. 1010, 24 S. E. 805, 54 Am. St. Rep. 764; St. Louis, I. M. & S. R. Co. v. Johnson, 74 Ark. 372, 86 S. W. 282; Chicago, R. I. & P. R. Co. v. Sharp (C. C. A.) 63 F. 532; Texas & P. R. Co. v. Moore (Tex. Civ. App.) 56 S. W. 248.

■ Likewise in authorizing a finding of negligence in failure "to have the air connected through the train," the court was not predicating liability upon the violation of the statute, article 6382, but was submitting to the jury the question of whether reasonable care under the circumstances required the air brakes to be connected while backing the string of cars through the city over the public streets. The charge, it is perceived, brings the standard of appellant's duty and liability to that of reasonable care under the particular circumstances to safeguard the protection of persons using the crossing. It may not be expected, nor is it practical in operation, that the air brakes be connected in ordinary switching of cars in the yards. The failure to have air brakes connected in certain circumstances of operation in the yards may not properly be regarded as evidence of negligence. But the failure to have the air connected through the train may, under particular circumstances, be evidence of negligence, although the ultimate work to be done was switching, if the failure to have the air connected was the proximate cause of the injury. In this case there was evidence to the effect that all the cars were equipped with air brakes, and that, if they had been coupled up, the train could have been stopped in about one-half the distance it could be stopped without the air coupled up. It is true the employees stated that it was not practical railroading, or usual or customary, to couple up the air brakes in switching. But it was further shown that there was nothing to prevent or interfere with the expeditious handling of this train on this occasion by coupling up the air brakes while transporting the cars from the west end of the city to the spur tracks in the east portion thereof. The string of cars was to be backed about a mile over the traveled streets of the city before reaching the spur tracks for spotting the cars. There was no switching to be done of the several cars until the spur tracks were reached. The failure to have the air brakes coupled up may have been the proximate cause of the collision under the circumstances, as within the province of the jury to say. The switchman on the car says that, when he first saw the automobile was not going to stop, he signaled the engineer to stop, and the automobile was "about thirty or thirty-five feet from the crossing." The engineer, in response to the switchman's signal, stopped the train in about 36 feet distance, whereas, as the evidence tended to show, by means of coupled-up air brakes, it "could have stopped in half the distance," and thus avoided the collision.

After a full consideration of the many other assignments of error, we conclude that each of them should be overruled, as not warranting a reversal of the judgment. The judgment is accordingly affirmed.