MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON,
TRUSTEE, v. BYRD.

4-7165                                    175 S. W. 2d 564

Opinion delivered November 22, 1943.

*Thomas B. Pryor, H. L. Ponder, Jr.,* and *H. L. Ponder,* for appellant.

*W. D. Davenport,* for appellee.

ROBINS, J.   Appellant seeks by this appeal to reverse a judgment based on jury's verdict for $250 in favor of appellee for damages to his truck alleged to have been caused by reason of the negligence of appellant in a

collision between appellant's locomotive and appellee's truck at a public railroad crossing between Levy, a suburb of North Little Rock, and Camp Robinson, on the night of January 24, 1941.

Four grounds for reversal herein are urged: (1) that there was no substantial evidence to sustain the jury's verdict, and that the lower court should have granted appellant's request for peremptory instruction in its favor; (2) that the lower court erred in giving instructions Nos. 2, 5 and 6 requested by appellee; (3) that the lower court erred in refusing to give appellant's instructions Nos. 1, 3, 4, 8 and 13; (4) that the verdict was excessive.

## I.

Appellee testified that he was employed at Camp Robinson as a nightwatchman, and that on the occasion of the collision was driving off of Missouri avenue to Little Rock; that he was driving "very slow," and looked up and down the track both ways and could not see a train, and that just before he started across the track he brought his truck almost to a stop; that he had heard the whistle of a train some distance back up the road as he drove off of Missouri avenue into the military road; that just as the truck went up onto the crossing it was struck by the tender of the locomotive; that there was no light on the back of the tender, and no one was flagging the crossing; that the only lights he saw were two or three hundred feet away, where there were some flood lights on the buildings; that he did not see the train, but had heard it as he drove on to the main highway, a distance of six or seven hundred feet from the crossing; that immediately after the accident happened he was interviewed by a claim agent and made and signed a written statement concerning the occurrence. In this statement, which did not differ substantially from his testimony, he said that when he heard the whistle he thought that the train was a mile or so away from him. Appellee testified that he had spent $156.11 for repairing his truck, and, without objection from appellant, stated that he had had an estimate made

by "mechanics and car dealers" of the additional damage and they estimated it at from $50 to $100; that he had bought the truck new in 1940 paying $750 therefor, and that the difference between the value thereof after the repairs were made and the value thereof before the collision was approximately $100.

The engineer in charge of the locomotive testified that on the occasion of the collision he had pulled a string of freight cars from the North Little Rock yards out to the foot of the hill on which Camp Robinson is located, and that it was necessary to cut his train into two parts in order to pull it up the hill; that he had pulled one portion up the hill and was returning down the hill to get the other part of the train; that near the foot of the hill, and about fifty feet below the crossing, there was a derail switch, which had to be closed by a brakeman before the locomotive could pass it; that one of the brakemen had gotten off there for the purpose of throwing this switch; that all the signals for the crossing required by law were given; that he saw the truck approaching the track, and when it looked as if there was danger of a collision he put the brakes on to stop the locomotive, but that it went on partly across the crossing; that he was unable to say whether the back of the tender had struck the truck or the truck had run into the tender; that the head brakeman, Russell, was attending to the derail; that the conductor, the fireman, and another brakeman were in the cab; that the locomotive was not moving over three or four miles an hour, and that he could, at that speed, stop it in a distance of from forty to fifty feet; that he could see appellee approaching the track but thought he was going to stop at a stop sign about thirty to fifty feet from the railroad track; that the locomotive was "coasting."

The fireman testified that from where he was sitting he could not see appellee, but corroborated the testimony of the engineer as to the giving of signals and as to the fact that the rear of the tender carried a headlight.

The conductor testified that he "was riding on the brakeman's seat on the engine, which is just in front of the fireman's seat, on the left-hand side," and that the proper signals for the crossing were given.

The head brakeman testified that he was handling the derail, but that he came up to the crossing from the derail and tried to flag appellee's car with a lantern; "I believe the bell was ringing and the whistle blew right up to the crossing and the headlight was burning bright . . . ; I flagged him with my lantern about the time he come around the curve (the testimony showed that this curve was about 600 or 700 feet from the crossing) and there is a stop sign there and I thought he was going to stop there, most of them do, some don't, and I turned around to get on the engine to get further orders."

The other brakeman, who was in the gangway between the locomotive and the tender, was not introduced as a witness. There was no testimony other than that of appellee and the members of the train crew.

In some respects the fact situation in the case at bar is similar to the one presented in the case of *Louisiana & Arkansas Railway Company* v. *Woodson,* 127 Ark. 323, 192 S. W. 174. In that case, the appellee had been injured at a crossing by a train backing across the street at night, and recovered a judgment in the lower court, which was affirmed by this court. We said in that case: "Appellee was facing an electric light which might more or less have blinded him. This light only enabled him to see straight across the tracks, and not up or down them. If it be true that this train was backing slowly across the street with the engine on the far end, it might have made little or no noise. If it be true that the brakeman was not on the back end of the back car signaling with his lantern, it may have been impossible for appellee to have seen the approaching train if he had been looking or to have heard said train if he had been listening."

Another case involving an injury by reason of a train being backed over a crossing at night is that of *St. Louis, Iron Mountain & Southern Railway Company* v. *Johnson,* 74 Ark. 372, 86 S. W. 282. In the last mentioned case all of the train crew testified that there was a brakeman with his lantern on the end of the car which struck Johnson, but this was denied by the injured party, and this court held that the jury's acceptance of the injured party's version of the accident was conclusive.

Here we have the testimony of appellee to the effect that he looked up and down the track and saw no train, that he saw some flood lights on a nearby building, but saw no other light, and that there was no light on the rear of the tender. Appellee denied that the brakeman was at the crossing attempting to flag him. It is undisputed that there was no brakeman or other employee of the railroad company riding the running board at the rear of the tender, and that the locomotive, "coasting" down grade, could have been stopped within a comparatively short distance.

The rule long adhered to by this court is that, in determining the sufficiency of the evidence in a case tried before a jury, this court must always give it the strongest probative force against the party who asked for a peremptory instruction that it will reasonably bear. *Gray* v. *Magness,* 200 Ark. 163, 138 S. W. 2d 73. Tested by this rule, it must be held that the testimony in the case at bar was sufficient to go to the jury on the question of negligence of the employees of appellant and contributory negligence of appellee.

## II.

Appellant made no specific objections to instructions Nos. 2, 5 and 6, complained of here, and does not in its brief point out any reason why they, or any of them, did not correctly state the law. We find no error in the giving of these instructions.

### III.

It is next contended by appellant that the court erred in refusing instructions Nos. 1, 3, 4, 8 and 13 requested by appellant. Instruction No. 1 was a peremptory instruction, and, in view of the conflict in the testimony, was properly refused. Instructions Nos. 3 and 4 were actually given.

Instruction No. 8 requested by appellant is as follows: "If you believe from the evidence in this case that the plaintiff has failed to show that a proper lookout was not kept, or has failed to show that the employees, agents and servants of the defendant, after discovering the peril of the plaintiff, failed to use ordinary care to avoid the injury complained of, then your verdict should be for the defendant." It will be seen that by the language of this instruction the burden was placed upon appellee to make proof that the proper lookout was not kept. By § 11144 of Pope's Digest of the Laws of Arkansas it is provided that the burden of proof devolves on the railroad company, in a case of this kind, to show that the proper lookout had been kept. This instruction, therefore, was not a correct declaration of the law.

Instruction No. 13 was properly refused by the court because it contained language that was clearly inapplicable to the case at bar. The concluding portion of this instruction is as follows: "If you find that he failed to do this and to exercise proper care for his own safety and for the safety of the persons riding in the car with him, and if you further find that they were injured solely by reason of this carelessness and negligence of the said driver of the car, then you are instructed that the plaintiffs would not be entitled to recover and your verdict should be for the defendants." The evidence in the case at bar showed that no one was riding with appellee, and that no one suffered a personal injury. The effect of giving this instruction in the form asked by appellant would have been to confuse the jury as to the issues in the case.

## IV.

It is next urged that the judgment is excessive. Appellee testified that he had spent $156.11 for necessary repairs on his truck, and also stated, without objection by appellant, that competent persons had told him that, in addition to these repairs, there was damage of from $50 to $100 more to his truck, and that in his opinion this additional damage amounted to approximately $100. This testimony was undisputed, and, assuming that it was true, as the jury has found, we cannot say that the amount of the verdict is excessive. *Sutton* v. *Webb*, 183 Ark. 865, 29 S. W. 2d 314.

It follows from what has been said that the judgment of the lower court must be affirmed, and it is so ordered.